[No. 26793. *En Banc.* February 9, 1938.]

GWIN, WHITE & PRINCE, INC., *Appellant,* v. HAROLD H. HENNEFORD et al., *Respondents.*[1]

STEINERT, C. J., ROBINSON, and MAIN, JJ., dissent.

[1]Reported in 75 P. (2d) 1017.

*Bayley & Croson,* for appellant.

*The Attorney General* and *R. G. Sharpe, Assistant,* for respondents.

MILLARD, J.—This action was instituted by Gwin, White & Prince, Inc., a domestic corporation of Seattle, to restrain the state tax commission from enforcing against the plaintiff the provisions of title II, chapter 180, Laws of 1935, p. 709 (Rem. Rev. Stat. (Sup.), § 8370-4 [P. C. § 7030-64]), for collection of a business or corporation tax from all persons engaged in business activities in the state of Washington. The appeal is from the judgment of dismissal rendered after a demurrer had been sustained to the complaint.

The facts presented by the allegations of the complaint, which are admitted by the demurrer to be true, and the stipulation of the parties, are in substance as follows: The appellant, acting solely as agent of various growers and grower organizations in Washington and Oregon, is engaged in the business of marketing apples and pears produced in Washington and Oregon and in making deliveries of fruit so sold. The growers and grower organizations have the exclusive authority to fix the price at which their or its products may be sold by appellant, who is required to collect the sales price of fruits sold and to deposit the proceeds of the sales in a separate fund, entitled "Gwin, White & Prince, Inc., Trustee." From this fund, appellant deducts its charges as fixed by the contract of the appellant with the growers and pays the balance to the contracting organization.

Appellant transacts its entire business originating in the state of Washington under a written contract with the Wenatchee-Okanogan Co-Operative Federation,

made up of approximately twelve cooperative associations in this state. Under the terms of that contract, appellant is the exclusive agent of the federation to sell and collect the proceeds from sales of all commercially packed apples and pears which come into the possession or control of the federation as agent for its members. By that contract, the appellant is obligated to sell the fruit and to obtain the widest possible distribution of same, to inform the federation and its members as to marketing conditions, to be responsible for collections on all sales made by appellant on all shipments where the bill of lading runs to appellant or its order, to handle all traffic matters pertaining to shipments, and to attend to the collection of claims against carriers or others. The compensation to be paid to appellant for its services under the contract is eight cents a box for apples and ten cents a box for pears.

Except for an occasional sale of a small amount of fruit made within this state, all of the fruit sold is shipped to points outside the state of Washington; that is, the fruit is shipped to other states and to foreign countries. In the conduct of its business as agent for the fruit growers, the appellant maintains sales representatives in many points outside of the state of Washington, both within the United States and in Europe, whose duty is to negotiate sales, and who execute written contracts of sale in appellant's name and on its behalf at their respective places of business outside of the state of Washington.

As a part of its business, the appellant sends to its representatives outside of this state daily bulletins listing cars of fruit which are for sale. The appellant gives shipping directions to the respective growers and sellers and handles all of the bills of lading on shipments, most of which are consigned to appellant at points outside of this state. Upon arrival of the fruit at its desti-

nation, appellant attends to the delivery of shipments and collection of the proceeds therefrom.

Upon the ground that it is acting only as an agent for the fruit growers and that it is engaged solely in interstate commerce, appellant has never taken out a license under the commission merchants law of this state. The state tax commission's demand for payment of a business or occupation tax upon the appellant's gross revenue (commission of eight cents a box for apples and ten cents a box for pears) derived from the business done by the appellant under its contract as agent of the fruit growers, was rejected. That is, the state tax commission's claim of a tax liability on the total commissions appellant receives from the growers for Washington-grown fruit sold and shipped to points within and without this state was denied.

Appellant's action to restrain the state tax commission from enforcement of the occupation tax statute resulted, as stated above, in dismissal of the action following sustaining of demurrer to the complaint.

Appellant contends that the imposition of the occupation tax upon it constitutes a direct impost upon the gross proceeds of appellant's foreign and interstate business; therefore, is in violation of Art. I, § 9, clause 5, and Art. I, § 10, clause 2, of the constitution of the United States, reading as follows:

"No tax or duty shall be laid on articles exported from any state."

"No state shall, without the consent of the congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws; . . ."

All persons engaged in business in this state are required by title II, chapter 180, Laws of 1935, p. 709, to pay an occupation tax for the act or privilege of engaging in business activities. The tax is measured by

a percentage of the gross income solely of that business. In the case at bar, the tax is measured by a percentage of the appellant's gross income, consisting of the commissions of eight cents a box for apples and ten cents a box for pears produced in the state of Washington and sold and shipped to points within and without this state. The tax which the state tax commission seeks to exact of the appellant is a tax laid for the purpose of revenue only and is measured, not by the sales price of the fruit, but by the amount received by the appellant for its services as the exclusive agent of the growers fixed on a "per box" basis.

■ The United States supreme court held in *Crew Levick Co. v. Pennsylvania,* 245 U. S. 292, 62 L. Ed. 295, 38 S. Ct. 126, that a state tax on the business of selling goods in foreign commerce measured by a percentage of the entire business transacted is both a regulation of foreign commerce and an impost, or duty on exports, and is, therefore, void.

"There is no question that the State may require payment of an occupation tax from one engaged in both intrastate and interstate commerce. But a State cannot tax interstate commerce; it cannot lay a tax upon the business which constitutes such commerce or the privilege of engaging in it. And the fact that a portion of a business is intrastate and therefore taxable does not justify a tax either upon the interstate business or upon the whole business without discrimination." *Cooney v. Mountain States Tel. & Tel. Co.,* 294 U. S. 384, 79 L. Ed. 934, 55 S. Ct. 477.

The appellant may not successfully invoke the rule that, if a contract of sale requires transportation across state lines, the connection is so close as to render the sale itself immune from taxation. In the case at bar, we are not dealing with a sale, but with a contract of agency—a contract for services to be rendered by appellant for the fruit growers.

The occupation tax is imposed upon all persons for the privilege of engaging in business activities in this state. The appellant is a domestic corporation operating, entirely within this state, a business which is exclusively with his principals, certain fruit growers; and for its services to its principals, the appellant is paid a commission as recited above. The tax imposed upon the appellant is not upon imports or exports or interstate or foreign commerce. Appellant is not a necessary factor in such commerce. Appellant renders an independent service—engages in a business within this state— which is advantageous to those who form a component part or link in such commerce, but that does not render invalid the imposition of the occupation tax, as it is not in conflict or inconsistent with the Federal constitution.

In *Ficklen v. Shelby County Taxing District,* 145 U. S. 1, 36 L. Ed. 601, 12 S. Ct. 810, it was held that a license tax measured by gross commissions imposed on factors and brokers buying or selling on commission, as applied to a commission merchant who negotiated sales on behalf of principals residing in other states with respect to goods located in other states, was valid. The court stated that the tax was clearly levied upon the complainants in respect to the general commission business they conducted, and not on the principal of the complainants. The court said:

"No doubt can be entertained of the right of a state legislature to tax, trades, professions and occupations, in the absence of inhibition in the state constitution in that regard; and where a resident citizen engages in general business subject to a particular tax the fact that the business done chances to consist, for the time being, wholly or partially in negotiating sales between resident and non-resident merchants, of goods situated in another State, does not necessarily involve the taxation of interstate commerce, forbidden by the Constitution . . .

"This tax is not on the goods, or on the proceeds of the goods, nor is it a tax on non-resident merchants; and if it can be said to affect interstate commerce in any way it is incidentally, and so remotely as not to amount to a regulation of such commerce."

In *Crew Levick Co. v. Pennsylvania*, 245 U. S. 292, 62 L. Ed. 295, 38 S. Ct. 126, cited above, *Ficklen v. Shelby County Taxing District*, 145 U. S. 1, 36 L. Ed. 601, 12 S. Ct. 810, was distinguished, and in the course of its opinion, the court said:

"Besides, *the tax imposed* in the *Ficklen Case was not* directly *upon the business* itself or *upon the volume* thereof, *but upon the amount of commissions earned* by the brokers, which, although probably corresponding with the volume of the transactions, was not necessarily proportionate thereto. For these and other reasons the case has been deemed exceptional." (Italics ours.)

In *American Mfg. Co. v. St. Louis*, 250 U. S. 459, 63 L. Ed. 1084, 39 S. Ct. 522, the court had under consideration an ordinance conditioning the right to manufacture goods within the city upon payment of a license tax computed upon the amount of the sales of the goods. It was contended that the ordinance, in effect, imposed a tax on sales of goods in the course of interstate commerce. In holding that the ordinance did not impose a tax on sales, the court said:

"No tax has been or is to be imposed upon any sales of goods by plaintiff in error except goods manufactured by it in St. Louis under a license conditioned for the payment of a tax upon the amount of the sales when the goods should come to be sold. The tax is computed according to the amount of the sales of such manufactured goods, irrespective of whether they be sold within or without the State, in one kind of commerce or another; and payment of the tax is not made a condition of selling goods in interstate or in other commerce, but only of continuing the manufacture of goods in the City of St. Louis.

"There is no doubt of the power of the State, or of the city acting under its authority, to impose a license tax in the nature of an excise upon the conduct of a manufacturing business in the city. Unless some particular interference with federal right be shown, the States are free to lay privilege and occupation taxes."

We do not agree with the argument that, as sales of Washington fruit for delivery without the state made directly by appellant's principals are immune from the tax in question, appellant is entitled to the same immunity, as it is merely a local agent for growers and associations in this state who have fruit to be sold. If those fruit growers and associations choose to make sales through the medium of an agent or independent contractor, as in the case at bar, the agent's or contractor's activities in this state in making and promoting the sales are subject to state taxation like any other local business.

Counsel for appellant cite as sustaining authority *Puget Sound Stevedoring Co. v. Tax Commission,* 189 Wash. 131, 63 P. (2d) 532, 302 U. S. 90, 58 S. Ct. 72. In that case, we sustained, against the protest of the taxpayer that an unlawful burden was imposed thereby upon interstate and foreign commerce, a tax laid upon the business of a stevedoring company, the amount of the tax being measured by a percentage of the gross receipts of the stevedoring company. The United States supreme court reversed our decision on the ground that the taxpayer was actually engaged in interstate commerce. The court said:

"The fact is stipulated, however, that no matter by whom the work is done or paid for, 'stevedoring services are essential to waterborne commerce and always commence in the hold of the vessel and end at the "first place of rest," and vice versa.' In such circumstances services beginning or ending in the hold or on the dock stand on the same plane for the purposes of this case as those at the ship's sling. The movement is continu-

ous, is covered by a single contract, and is necessary in all its stages if transportation is to be accomplished without unreasonable impediments. The situation thus presented has no resemblance to that considered in *Pennsylvania R. R. Co. v. Knight,* 192 U. S. 21, 26, where an interstate railroad furnished its passengers with taxicab service to and from its terminus, the service being 'contracted and paid for independently of any contract or payment for strictly interstate transportation.' The business of loading and unloading being interstate or foreign commerce, the state of Washington is not at liberty to tax the privilege of doing it by exacting in return therefor a percentage of the gross receipts."

Clearly, the citation is inapplicable.

The tax imposed in the case at bar is not directly upon the business itself or upon the volume of business, but upon the amount of commissions earned by the appellant. In principle, the case at bar and *Ficklen v. Shelby County Taxing District,* 145 U. S. 1, 36 L. Ed. 601, 12 S. Ct. 810, are indistinguishable.

The sales made through the sales representatives of the appellant in other states were Washington contracts. The activities of those sales solicitors in other states did not transform appellant's business into interstate commerce so as to exempt appellant from payment of the occupation tax of which it complains. See *Hopkins v. United States,* 171 U. S. 578, 43 L. Ed. 290, 19 S. Ct. 40, and *Blumenstock Bros. Adv. Agency v. Curtis Pub. Co.,* 252 U. S. 436, 64 L. Ed. 649, 40 S. Ct. 385.

We repeat that, if the sales and shipments of the Washington fruit by the owners to points without the state constituted interstate commerce, it does not follow that the services performed by the appellant, as agent or contractor, are so connected with the interstate transactions as to make those services a part of the interstate commerce. Any effect, at most, of such services upon

interstate commerce is but remote, indirect, and incidental; therefore, such activities of appellant as agent or contractor are within the state's legitimate taxing power.

The judgment is affirmed.

HOLCOMB, BEALS, BLAKE, GERAGHTY, and SIMPSON, JJ., concur.

ROBINSON, J. (dissenting)—I dissent from the foregoing opinion because I think the majority are in error both as to the facts presented in the case and as to the principles of law applicable thereto. The factual error appears most prominently in the following pivotal excerpt from the opinion:

"The appellant is a domestic corporation *operating, entirely within this state,* a business which is exclusively with his principals, certain fruit growers; and for its services to its principals the appellant is paid a commission as recited above." (Italics mine.)

The complaint alleges, and the demurrer admits, that the appellant is engaged in the business of distributing Washington grown apples and pears throughout the states of the Union and in a number of foreign countries; that it maintains sales representatives at many points outside the state of Washington, who at such points negotiate said sales and execute written contracts of sale "on behalf of the appellant." The appellant's compensation is fixed at so much per box, that is to say, it is calculated per unit of volume.

It further alleges:

"That as a further part of its business plaintiff handles the bills of lading on all shipments made in compliance with the contracts of sale entered into in foreign and extra-state territory, most of said shipments being consigned to the plaintiff at extra-state points, and that through its foreign and extra-state representatives plaintiff attends to the delivery of said

shipments and collects the proceeds therefrom which are thereafter forwarded to the plaintiff at Seattle, Washington, all in the course of interstate and foreign commerce."

All of these allegations (except, of course, the last nine words of the quotation) are admitted by the demurrer. I do not see how the majority can rightly say that these allegations describe a concern operating "entirely within this state." To me, they picture a far-flung business, actively operating in many of our sister states and in a number of foreign countries, in distributing Washington grown apples and pears throughout the channels of trade, a concern which, however, has, for quite understandable reasons of convenience, chosen to incorporate itself and maintain its head office in the state of Washington, the source of the product which it is engaged in distributing.

That interstate and foreign commerce is not confined to transportation of goods from one state to another or from one country to another, but comprehends, in addition, all commercial intercourse between states and countries and all activities necessary to its accomplishment, is so elementary that the citation of judicial decisions so holding would be superfluous. It is obvious that the mere carriage or transportation of the Washington fruit to New York, Philadelphia, or Boston, or to London, Paris, or Rome, would be futile unless someone performed the various services with relation to the shipments which the appellant alleges it performs. Without these services, the commerce involved could not be accomplished. Nor do I perceive any distinctive difference between the nature of the services performed by the appellant and the services performed by the railroad company which carries the fruit across the country, or the steamship company which carries it overseas.

As to the fruit growers, both the appellant and the transportation company are independent contractors. The appellant's services are paid for, not by a commission upon the value or sale price of the fruit, but are calculated per unit of volume. The transportation company's compensation is, to a large extent, directly proportionate to weight and volume. The services performed by each are services necessary to the commerce involved. Upon what theory, then, is it cheerfully admitted on the one hand that a tax upon the transportation costs (the freight) would be a direct burden upon interstate or foreign commerce, and hotly contended on the other hand that a tax upon the other equally necessary and inescapable distribution costs is not?

The fact is that, although the opinion of this court in *Puget Sound Stevedoring Co. v. Tax Commission,* was reversed on November 8th last by the supreme court of the United States, 302 U. S. 90, 58 S. Ct. 72, its erroneous reasoning is by the majority again made the basis of decision in this case. In that case, the court held the compensation of the stevedoring company taxable because (1) earned wholly in a local business; and (2) carried on by an independent contractor. In this case, the majority attempts to fit the facts to (1) of that formula by reducing the appellant's status to that of a mere commission merchant performing a merely local service, and this is done notwithstanding the broad admissions of the demurrer to the contrary. Having done that to their satisfaction, the majority proceed to apply the exploded and discredited "independent contractor" theory originally announced in the reversed *Puget Sound Stevedoring Co.* case, and thus arrive at their decision.

As justification for this rather strong language, I

quote the following excerpt from the very heart of the majority opinion:

"Appellant renders an independent service—engages in a business within this state—  . . ."

And lest this be insufficient to prove the point, I quote from that portion of the opinion which states the actual decision in the case:

" . . . it [the appellant] is merely a local agent for growers and associations in this state who have fruit to be sold. If those fruit growers and associations choose to make sales through the medium of an agent or independent contractor, as in the case at bar, the agent's or contractor's activities in this state in making and promoting the sales are subject to state taxation like any other local business."

The last sentence in the above quotation constitutes the decision in this case. It does not meet the test of either reason or authority. The fruit growers made a contract with the appellant in which the appellant agreed to render, for so much per box, certain services in connection with exchanging their fruit for the money of consumers in other states and countries. Let it be assumed that they, at the same time, also made a contract with a railroad to perform the actual carriage required by this commerce. Would the railroad be any less an independent contractor than the appellant? If not, and no other answer is possible, could its compensation under its contract be taxed? The answer is no, even though it is an independent contractor—for such a tax would be a burden upon interstate and foreign commerce. Neither can the compensation of the appellant be taxed *if* its compensation is received for services rendered in interstate and foreign commerce. The nature of the service is wholly decisive, and whether or not it is rendered by an independent contractor, has nothing whatever to do with the matter.

I do not pursue this subject further because, in the first place, it is vain to labor overmuch in attempting to establish the obvious; and second, the question has been settled by authority binding upon this court. In reversing the judgment of this court in the *Puget Sound Stevedoring Co.* case, *supra,* the supreme court of the United States said, less than three months ago, that the judgment was "placed upon the ground that the taxpayer was an independent contractor engaged in a local business," and, speaking through Mr. Justice Cardozo, disposed of the "independent contractor" theory in the following words:

"The fact is not important that appellant does business as an independent contractor as long as the business that it does is commerce immune from regulation by the states. *What is decisive is the nature of the act, not the person of the actor.*" (Italics mine.)

The rationale of the majority opinion is, therefore, clearly unsound. I think the result is, also. Whether it is or not, wholly depends upon whether or not the appellant renders a foreign and interstate commerce service, as has been indicated at the beginning of this dissent. I think that the complaint alleges facts which show that it does render such services in other states and in foreign countries, services indispensable to the accomplishment of the commerce involved, and some of them not differing in character from the services rendered by the carrier which transports the fruit.

The majority say that the appellant's business is entirely carried on in this state, and that it is in no sense interstate in character. But when it is admitted that the appellant, acting through its representative, which is the only way a corporation can act, calls on a dealer in New York or London, negotiates a sale of Washington fruit, makes a contract in its own name, and, subsequently, personally attends to the delivery

and collection of the proceeds, I need more than I find in the majority opinion, and more than I think can be found anywhere else, to convince me that these acts are performed in the state of Washington, or that the collection of the freight, for example, is an act in any way differing in nature from a transportation company's collection on a C. O. D. shipment.

In my opinion, the ruling and judgment appealed from should be reversed.

MAIN, J., and STEINERT, C. J., concur with ROBINSON, J.