MORRIS WILLIAMS, *Respondent,* v. G. W. HAMILTON, *as Attorney General, et al., Appellants.*[1]

*The Attorney General* and *Geo. G. Hannan, Assistant,* for appellants.

*McMicken, Rupp & Schweppe,* for respondent.

BLAKE, J.—Chapter 23, Laws of 1931, p. 77, Rem. Rev. Stat., § 8358-1 [P. C. § 1880-1] *et seq.,* provides for the levy of an excise tax on the sale of butter substitutes. The act (§ 2, p. 77, Rem. Rev. Stat.,

[1]Reported in 76 P. (2d) 1029.

§ 8358-2 [P. C. § 1880-2]) provides that every *distributor* of butter substitutes, as defined in the act, shall, not later than the fifteenth day of each month, file with the director of agriculture a sworn statement showing the quantity of butter substitutes sold by him during the preceding month, and (§ 5, p. 79, Rem. Rev. Stat., § 8358-5 [P. C. § 1880-5]) pay an excise tax thereon of fifteen cents a pound. A *distributor* is defined (§ 1 (b), p. 77) to be one "who imports and sells such butter substitute into this state, except as hereinafter provided."

Chapter 136, Laws of 1937, p. 503, Rem. Rev. Stat. (Sup.), § 8358-1, amended the definition so as to

". . . include any person . . . *who shall sell or solicit sales for future delivery* of butter substitute upon which the excise herein provided has not been paid." (Italics ours.)

Section 12 of chapter 23, Laws of 1931, p. 81, Rem. Rev. Stat., § 8358-12 [P. C. § 1880-12], declares that "any distributor . . . violating any of the provisions of this act shall be guilty of a gross misdemeanor." Section 13, p. 81, Rem. Rev. Stat., § 8358-13 [P. C. § 1880-13], provides:

"Nothing in this act contained shall be construed to require the payment of the excise tax herein provided for, or the doing of any acts which would constitute an unlawful burden upon the sale or distribution of butter substitutes as herein defined, in violation of the constitution or laws of the United States."

Plaintiff filed his complaint, in which he alleged that the defendants, conceiving him to be a *distributor* of "Nucoa" under the terms of the act, were threatening to collect the tax and invoke the penalties provided for in the act because of his refusal to pay the tax prescribed; that he is exempted by § 13 from the operation of the act, in that all his activities in receiving

orders for and in the delivery of "Nucoa" are a part of and in interstate commerce; that the attempt to force him to comply with the act and pay the tax is in violation of the commerce clause (Art. I, § 8) of the constitution of the United States.

The defendants interposed a demurrer to the complaint, which was overruled. The defendants refusing to plead further, the court entered judgment enjoining them from attempting to collect the tax and from invoking the penal provisions of the act against plaintiff for his failure to comply with its provisions. Defendants appeal.

The sole question to be determined is whether, at the moment of incidence of the tax, the commodity "Nucoa" is moving in interstate commerce. In order to determine the question, we must consider the method in which the commodity is distributed, as alleged in the complaint.

Respondent declares that, in receiving orders for and in distributing "Nucoa", he follows the following procedure exclusively: Any person or persons in the city of Seattle and elsewhere in the state of Washington may order two pounds or any larger quantity of "Nucoa," by filling in and signing a proper order blank at respondent's place of business in that city, and paying the specified price per pound for the amount ordered; that respondent thereupon forwards the filled-in order blank, together with the money paid by the purchaser, less respondent's commission of three and one-half cents per pound, to a dealer in "Nucoa" in the city of Portland, Oregon; that such dealer fills the order by wrapping, in separate wrappers, the specified quantity ordered by each individual buyer, and placing a band around each package bearing the name of the purchaser; that the individual packages are thereafter forwarded, either by parcel post, express, or freight,

from Portland, direct to respondent's place of business in Seattle; that upon receipt of such packages by respondent, each person who ordered "Nucoa" receives the package containing the amount ordered in its original wrapping bearing his name; that if for any reason any "Nucoa" is not delivered to the person who previously ordered it, it is in all instances returned to the dealer in Portland.

■ The supreme court of the United States has uniformly held that commodities so ordered and delivered move in interstate commerce, and that any tax which falls upon the commodity at any stage of the process, from solicitation of the order to delivery of the commodity, is a direct burden upon interstate commerce, and therefore void as in violation of Art. I, § 8, clause 3, of the constitution of the United States. *Robbins v. Shelby County Taxing Dist.,* 120 U. S. 489, 30 L. Ed. 694, 7 S. Ct. 592; *Brennan v. Titusville,* 153 U. S. 289, 38 L. Ed. 719, 14 S. Ct. 829; *Stockard v. Morgan,* 185 U. S. 27, 46 L. Ed. 785; *Caldwell v. North Carolina,* 187 U. S. 622, 47 L. Ed. 336, 23 S. Ct. 229; *Kehrer v. Stewart,* 197 U. S. 60, 49 L. Ed. 663, 25 S. Ct. 403; *Rearick v. Pennsylvania,* 203 U. S. 507, 51 L. Ed. 295, 27 S. Ct. 159; *Dozier v. Alabama,* 218 U. S. 124, 54 L. Ed. 965, 30 S. Ct. 649, 28 L. R. A. (N. S.) 264; *Crenshaw v. Arkansas,* 227 U. S. 389, 57 L. Ed. 565, 33 S. Ct. 294; *Stewart v. Michigan,* 232 U. S. 665, 58 L. Ed. 786, 34 S. Ct. 476; *Davis v. Virginia,* 236 U. S. 697, 59 L. Ed. 795, 35 S. Ct. 479; *Western Oil Refining Co. v. Lipscomb,* 244 U. S. 346, 61 L. Ed. 1181, 37 S. Ct. 623; *Cheney Bros. Co. v. Massachusetts,* 246 U. S. 147, 62 L. Ed. 632, 38 S. Ct. 295; *Real Silk Hosiery Mills v. Portland,* 268 U. S. 325, 69 L. Ed. 982, 45 S. Ct. 525.

Perhaps the case most apposite in point of fact is that of *Rearick v. Pennsylvania, supra.* The procedure as indicated in the opinion was practically identical

with the method outlined in the complaint in the instant case. Among the commodities for which the agent in Pennsylvania took orders for an Ohio corporation were brooms. In filling the orders, brooms were tagged and marked according to the number ordered and then tied together in bundles for shipment. It was contended that the brooms were not in the original package when delivered; that before they were sold they "had become mingled with, or part of, the common mass of goods in the State, and so subject to the local law." To this contention, the court answered:

"The brooms were specifically appropriated to specific contracts, in a practical, if not in a technical, sense. Under such circumstances it is plain that, wherever might have been the title, the transport of the brooms for the purpose of fulfilling the contracts was protected commerce."

As holding to the contrary, appellants cite *Sonneborn Bros. v. Cureton*, 262 U. S. 506, 67 L. Ed. 1095, 43 S. Ct. 643; *Gregg Dyeing Co. v. Query*, 286 U. S. 472, 76 L. Ed. 1232; *Wiloil Corp. v. Pennslyvania*, 294 U. S. 169, 79 L. Ed. 838, 55 S. Ct. 358; *Virginia v. Imperial Coal Sales Co.*, 293 U. S. 15, 79 L. Ed. 171, 55 S. Ct. 12. We think it is clear that the tax in the first three cases was upheld on the theory that its incidence was subsequent to the termination of the interstate movement of the commodity. In other words, the commodity "had become mingled with, or part of, the common mass of goods in the State, and so subject to local law." In the last case cited, the court said:

"Decisions holding invalid license fees or excise taxes measured in such a manner as to burden interstate commerce . . . are . . . inapplicable."

By way of analogy, appellants cite *Henneford v. Silas Mason Co.,* 300 U. S. 577, 81 L. Ed. 814, 57 S. Ct. 524, and *Vancouver Oil Co. v. Henneford,* 183 Wash. 317, 49 P. (2d) 14, holding valid our compensating tax (Title IV, chapter 180, Laws of 1935, p. 726). This tax, however, is not upon the commodity, but upon its use. And here too, the incidence of the tax is subsequent to the termination of the interstate movement of the commodity.

Finally, appellants contend that the injunction granted by the trial court is too broad; that, even though respondent cannot be required to pay the tax imposed by chapter 23, Laws of 1931, he is subject to other provisions of the act. Section 13, which we have quoted, seems to us a complete answer to this contention. Since the entire procedure in the sale of "Nucoa", as outlined in respondent's complaint, is within the protection of the commerce clause of the Federal constitution, he is, by the express terms of § 13, in all respects exempted from the operation of the act.

Judgment affirmed.

STEINERT, C. J., BEALS, and ROBINSON, JJ., concur.

MILLARD, J. (dissenting)—In *Ficklen v. Shelby County Taxing Dist.,* 145 U. S. 1, 36 L. Ed. 601, 12 S. Ct. 810, it was held that a resident citizen may be legally subjected to a tax, measured by his gross commissions, for the privilege of engaging in a business within the taxing state, which business consists of negotiating sales on behalf of principals residing in other states with respect to goods located in other states. There is no difference in principle whether the tax imposed upon a distributor is upon the volume of business or upon the amount of commissions earned by the distributor. The position of respondent is

70

analogous to that of appellant in *Gwin, White & Prince, Inc. v. Henneford,* 193 Wash. 451, 75 P. (2d) 1017.
The judgment should be reversed.

[No. 26802. Department Two. March 8, 1938.]