Sidney A. Fine, J.
Defendants and plaintiff move for summary judgment in their respective favors. The motions are based upon the examination before trial of plaintiff, including the exhibits offered in evidence upon the examination.
The action is one by plaintiff, an ocean freight forwarder and broker, for a judgment declaring that the “ general business tax ’ ’ imposed by section B46-2.0 of the Administrative Code of the City of New York upon the gross receipts received in or allocable to the city, for the privilege of carrying on any trade, business, or commercial activity in the city, is unconstitutional insofar as the city attempts to apply it to plaintiff’s receipts as an ocean freight forwarder. Plaintiff urges that such receipts are exempt from local taxation by virtue of the provisions of the United States Constitution prohibiting State imposts on exports and imports (art. I, § 10) and giving Congress the power to regulate interstate and foreign commerce (art. I, § 8). In a second cause of action, plaintiff seeks to recover a payment of the tax for the year 1956, on the ground that the tax was not legally due and that the payment was made under duress.
Plaintiff’s principal place of business is in New York City, and, as plaintiff admits, the receipts sought to be taxed result from activities conducted by it exclusively in New York City.
Plaintiff, in behalf of either domestic exporters or foreign importers, performs various services required to co-ordinate the movement of freight from inland supply points to ocean carriers which transport the same to foreign destinations. It does not *106 physically handle the goods at any time. After an exporter takes a foreign order, he submits to plaintiff the purchaser’s import license and letter of credit for checking and suggestions as to any necessary corrections. Plaintiff advises the exporter as to the port from which shipment should be made, taking into consideration the availability of steamer space, the inland freight rate to the port, railroad congestion, and the ship’s facilities for loading the particular cargo.
At or about the time the cargo is ready to move from the inland point of origin, plaintiff books space therefor on the steamer selected. Plaintiff also advises the exporter as to whether the shipment to the port should be made by truck or rail and as to when it should leave the exporter’s plant or warehouse in order to arrive at the ocean pier in time to be loaded upon the selected steamer and yet not so early that demurrage charges will be incurred while the cargo is waiting at the pier to be loaded onto the vessel. Plaintiff keeps track of the shipment until it is delivered at the pier. It is given the railroad car numbers so that it can trace the shipment and expedite its movement to the port. If the shipment by the exporter is made by truck, plaintiff arranges, when necessary, for trucking it to the pier. If the cargo is to be held at the port, plaintiff arranges for its warehousing.
Plaintiff prepares, and delivers to the railroad, delivery instructions and follows them up to see that delivery is made to the correct pier on schedule. It furnishes the railroad with a ‘ ‘ dock receipt ’ ’ which is to be executed by the master of the vessel. This document is later used by the steamship office as the basis for issuance of the bill of lading. If the check at the pier reveals that the dock receipt correctly states the freight delivered to the pier, the ocean carrier’s employee signs the receipt. While the goods are moving ‘ ‘ to shipside ’ ’, plaintiff prepares the bill of lading, using its expert knowledge in giving the goods the proper classification under the carrier’s tariff, and it also computes the proper freight charge. It then takes the bill of lading to the steamship office where it is ultimately signed, after being checked against the dock receipt. Often plaintiff advances the freight money to the ocean carrier, for its employer, either the domestic exporter or the foreign importer.
On occasions, plaintiff consolidates shipments coming from different interior manufacturers, destined to the same overseas consignee, thereby effecting savings in bill of lading charges, documentary work, consular charges and customs brokerage *107 fees at the port of destination. "Where an export license is required, plaintiff prepares and processes the application and delivers it to the steamship office. If shipments are not insured under the exporter’s policy, plaintiff insures them under its own policy. In either case, it prepares a certificate of insurance. Where a consular invoice is necessary under the laws of the importing country, plaintiff prepares it and secures a visa from the appropriate foreign consul. In order to enable the exporter to obtain payment under the letter of credit opened by the foreign importer, plaintiff furnishes the appropriate bank with a letter transmitting a sight draft, a commercial invoice, a consular invoice, a certificate of origin, the bill of lading, and a certificate of insurance.
Plaintiff is compensated by the ocean carrier in an amount equal to l1/4% or 2%% of the ocean freight charges. Plaintiff states that “ this compensation is not only for securing the cargo for the vessel, but the coordination work which gets the freight from the inland supply point to the vessel on time and properly documented so it may obtain the revenue from it on that sailing ’ ’. Plaintiff further notes that its services in preparing the bill of lading are relied upon by the ocean carrier, which is saved the expense of doing the work itself. In addition, plaintiff receives compensation from its clients (the domestic exporters or the foreign importers, as the case may be), the amount of which depends on the type of commodity handled and the amount of work performed by plaintiff.
It is evident from the foregoing that plaintiff’s services fall into two categories, (1) freight brokerage and incidental services performed on "behalf of the ocean carrier, and (2) freight forwarding from the exporter to the ocean carrier. The Comptroller has ruled that the compensation received by plaintiff (and by others similarly situated) from the ocean carrier is not subject to the general business tax, as the services performed on behalf of the ocean carrier are deemed an integral part of foreign commerce. This ruling conforms to the decisions of the United States Supreme Court in Texas Transp. Co. v. New Orleans (264 U. S. 150) and McCall v. California (136 U. S. 104) which held invalid the imposition of State taxes on agents who solicited freight and performed incidental services on behalf of ocean or interstate carriers. The Comptroller has, however, ruled that plaintiff’s receipts from domestic exporters or foreign importers, for freight forwarding services rendered by it on their behalf, are not constitutionally immune from the general business tax. The question presented by the motions now before the court is the correctness of that view.
*108 The city cites the decisions in Canton R. R. Co. v. Rogan (340 U. S. 511) and Western Maryland Ry. Co. v. Rogan (340 U. S. 520) as dispositive of the instant case.
In Canton R. R. Co. v. Rogan (supra) a Maryland franchise tax, measured by gross receipts, was sought to be enforced against a common carrier of freight which operated entirely within the City of Baltimore. The receipts sought to be taxed were derived from services rendered in the switching of freight cars, storage of goods pending forwarding, wharfage and the renting of a crane to load and unload ships. There, too, as in the present case, the contentions were made that insofar as the revenues sought to be taxed included receipts from the handling of goods moving in foreign trade, the tax was unconstitutional under the import-export (art. I, § 10) and the commerce (art. I, § 8) clauses of the Federal Constitution. Those contentions were rejected.
The Supreme Court held that the Maryland tax challenged in the Canton Railroad Co. case (supra) did.not contravene the import-export clause, since the tax was not on the articles imported or exported. The court thus noted that it was not the equivalent of a direct tax, such as a stamp tax on foreign bills of lading, or a tax on foreign charter parties, or a tax on policies insuring exports against marine risks. The court declared that an article may be an export, and therefore not legally taxable, long before it reaches the port of shipment, but that, nevertheless, when the tax is on activities connected with the process of export or import, the range of immunity cannot be so wide. The fact that the railroad did not load or unload the vessels was strongly emphasized. Although the court expressly refrained from deciding whether activities in loading or unloading would be immune from taxation, it held (p. 515) that any activity more remote than loading or unloading the vessel “ does not commence the movement of the commodities abroad nor end their arrival and therefore is not a part of the export or import process.” The acts constituting the export or import process “begin and end at water’s edge”, declared the court (p. 515).
The claim that the tax violated the commerce clause was likewise overruled (p. 515): “ The objection to Maryland’s tax on the ground that interstate commerce is involved is not well taken. It is settled that a nondiscriminatory gross receipts tax on an interstate enterprise may be sustained if fairly apportioned to the business done within the taxing state (see Western Live Stock v. Bureau of Revenue, 303 IT. S. *109 250, 255) and not reaching any activities carried on beyond the borders of the state.”
A somewhat similiar situation was presented in Western Maryland Ry. Co. v. Rogan (340 U. S. 520, supra) where the same Maryland tax was imposed on an interstate carrier operating several piers in Baltimore for handling cargoes, as well as a grain elevator. Whereas the Canton Railroad Co. case (340 U. S. 511, supra) involved the handling of exports and imports within a port, this case involved activities in the transportation of exports to and from the port. The Supreme Court followed its decision in the Canton Railroad Co. case (supra), stating that (p. 522) “ So far as taxes on activities connected with bringing exports to or imports from the ship are concerned, we think the line must be drawn at the water’s edge. Whether loading and unloading would be exempt is a question we reserve.”
It is difficult to distinguish plaintiff’s forwarding activities from the activities of the rail carriers in the two foregoing cases. Plaintiff’s activities on behalf of the exporters or foreign importers similarly end at the water’s edge in New York City. The loading onto the vessel is done by the carrier without any supervision or other services by plaintiff. Once the goods reach the ocean carrier’s pier and a dock receipt therefor is issued, plaintiff’s forwarding activities terminate, except for obtaining the bill of lading at the steamship office and forwarding the same and the other documents to the bank which then makes payment to the exporter.
Plaintiff makes much of the importance of the services of forwarders to foreign and interstate commerce. The activities of the railroad carriers involved in the Canton Railroad Co. and Western Maryland Ry. Co. cases (supra), however, were likewise vitally important to foreign and interstate commerce and yet they were held not entitled to constitutional immunity. Plaintiff also stresses the fact that foreign freight forwarders have been held to be subject to the jurisdiction of the Federal Maritime Board (United States v. American Union Transp., 327 U. S. 437). This holding was based on the fact that the United States Shipping Act of 1916, as amended (U. S. Code, tit. 46, § 801 et seq.) placed under the jurisdiction of the U. S. Shipping Board (now the Federal Maritime Board) common carriers by water in interstate and foreign commerce and “ other person[s) ” including those “ carrying on the business of forwarding * * * in connection with a common carrier by water ” (U. S. Code, tit. 46, § 801). (Emphasis added.) A determination that ocean freight forwarders are within the *110 jurisdiction of the Federal Maritime Board does not, however, necessarily require a holding that their gross receipts from local activities may not be constitutionally taxed by the locality in which the activities are performed.
The United States Supreme Court has indeed recently reaffirmed the validity of a State income tax levied on that portion of a foreign corporation’s net income earned from and fairly apportioned to business activities within the taxing State, even though those activities are exclusively in furtherance of interstate commerce (Northwestern Cement Co. v. Minnesota, 358 U. S. 450). As the court declared in that case (pp. 461-462): ‘ ‘ While it is true that a State may not erect a wall around its borders preventing commerce an entry, it is axiomatic that the founders did not intend to immunize such commerce from carrying its fair share of the costs of the state government in return for the benefits it derives from within the State. * * * As was said in Wisconsin v. Minnesota Mining & Mfg. Co., 311 U. S. 452, 453 (1940), ‘ it is too late in the day to find offense to that [commerce] Clause because a state tax is imposed on corporate net income of an interstate enterprise which is attributable to earnings within the taxing state.’ ”
Plaintiff places great reliance upon Texas Transp. Co. v. New Orleans (264 U. S. 150, supra) and McCall v. California (136 U. S. 104, supra). Those cases, however, merely held that agents for foreign and interstate steamship and rail carriers who received commissions from the carriers, calculated on the gross amount of the freight charges, for soliciting cargoes, selecting ships to carry them, arranging deliveries at wharves or railroad stations, issuing bills of lading, arranging for loading services, and incidental services, were engaged in the carrying on of foreign and interstate commerce and were, therefore, immune from taxation upon their commissions. Upon the basis of those decisions the Comptroller has ruled, as noted above, that the compensation received by plaintiff and others from the ocean carriers with whom they book freight is exempt from the general business tax. The rationale of those decisions, as pointed out by the United States Supreme Court in Puget Sound Co. v. Tax Comm. (302 U. S. 90, 95) was that “The contractors there considered were found to be acting as agents of foreign steamship companies with authority to make contracts binding on the principals and even running in their names.” Plaintiff is entitled to and has received exemption for compensation obtained by it from the ocean carriers for services rendered as their agent. It does not follow, however, that plaintiff is also entitled to exemption for its receipts from *111 noncarriers for local services rendered in supervising and co-ordinating the movement of goods to the water’s edge and for incidental services which do not involve the loading of the vessels or movements beyond the water’s edge.
Plaintiff contends that the Comptroller’s decision rests on an artificial and unwarranted separation and differentiation between its services for exporters and importers and its activities on behalf of the ocean carriers. It urges that the latter activities could not be performed without the other services. A similar contention could, however, be applied with equal force to the facts in the Canton Railroad Co. (340 U. S. 511, supra) and Western Maryland Ry. Co. (340 U. S. 520, supra) cases where no export was possible without the sérvices of the carriers there involved, who were, nevertheless, held not to be immune from local taxation.
Plaintiff also contends that its forwarding services and its freight brokerage activities are interrelated and overlap to some extent. It may be that some of the services rendered to the ocean carriers are, in a sense, also rendered to the exporters or foreign importers who employ plaintiff. The constitutional exemption, to which plaintiff is entitled, applies, however, only to its income derived from acts as agent of the ocean carriers. The decisions of the United States Supreme Court, discussed above, seem to compel the conclusion that that exemption does not apply to its receipts as a forwarder, acting as agent for exporters and importers, derived from purely local activities, merely because some of its local services as such agent may duplicate services for which it is compensated by the ocean carriers, as their agent.
The fact that the cost of interstate or foreign commerce may be increased as the result of a tax is not sufficient, of itself, to invalidate the tax as an interference with such commerce (Coverdale v. Pipe Line Co., 303 U. S. 604, 612; Hopkins v. United States, 171 U. S. 578, 592).
No question is here presented on the score of discrimination or apportionment of activities.
It accordingly follows that plaintiff’s receipts from its forwarding services, rendered locally in the City of New York, and not extending beyond the water’s edge, are validly the subject of the general business tax. It is unnecessary to consider whether, if the court’s decision were otherwise, plaintiff would be entitled to recover upon the second cause of action, the tax payment heretofore made.
Plaintiff’s motion is denied and defendants’ motion is granted.
Settle order.