IN RE TAXES, ARMSTRONG PERRY, DBA HERBERT PERRY & SON AND DBA ROBY-PERRY ASSOCIATES.

No. 4079.

JANUARY 31, 1963.

TSUKIYAMA, C. J., CASSIDY, WIRTZ, JJ., KING, CIRCUIT JUDGE, IN PLACE OF LEWIS, J., DISQUALIFIED, AND HEWITT, CIRCUIT JUDGE, IN PLACE OF MIZUHA, J., DISQUALIFIED.

OPINION OF THE COURT BY CIRCUIT JUDGE KING.

Appellant Armstrong Perry was assessed a general excise tax under chapter 101, as amended, Revised Laws of

Hawaii 1945. He was denied exemption on gross income received from commissions amounting to $3,989.35 for the months of October, November, and December, 1955, for services rendered to mainland manufacturers of tangible goods in obtaining local orders for their products. The excise tax imposed upon the appellant amounted to $187.20 calculated at the rate of 2½% on the $3,989.35 received by the taxpayer during the disputed period.

Appellant paid the tax under protest and appealed to the Tax Appeal Court for relief. The Tax Appeal Court denied him relief, sustaining the Tax Commissioner's denial of exemption. From that decision appellant has appealed to this court.

Appellant is a resident of Hawaii. He is an individual doing business as Herbert Perry & Son and Roby-Perry Associates and maintains an office in the Pantheon Building, Honolulu.

Appellant represents more than one mainland manufacturer. His agreements with them provide for their sending him samples of goods to be sold and also specify the terms of commission he is to receive. He procures orders by displaying these samples and sends these orders directly to the manufacturers on the mainland. At times the customers send the orders directly to the manufacturer. In either event he receives commissions on any order that is accepted and filled by the manufacturer. The goods are then shipped straight to the customers with the latter paying directly to the manufacturer.

Not all of the orders solicited by the appellant are procured out on the field. Appellant, along with others in the Pantheon Building, advertises for customers to come to that building in connection with their purchases of goods. Furthermore, when "Market Week" is held he participates by displaying samples and procures whatever orders he can solicit on such occasion.

Besides doing business on a commission basis, the appellant jobs the goods of one of his manufacturers; that is, he sometimes orders the goods for the customer and then distributes the goods as a jobber. At times he sells the samples belonging to the manufacturer, and also at times buys and sells other goods, locally manufactured or imported from the mainland. In these instances appellant pays the general excise tax at either the retailing or wholesaling rate without any protest.

Based on the foregoing facts appellant contends that the Tax Appeal Court erred when it ruled that the disputed amount is not exempt from the general excise tax and that such a tax does not unduly burden interstate commerce.

We find little merit in appellant's argument that he comes within the provisions of section 5458.[1] Appellant is not being taxed as a *seller* of goods. He is being taxed for gross income received for "performing services for another."[2] Section 5458, in exempting certain gross income, makes no reference whatsoever to gross income received in the form of commissions which is derived from *services* performed for another. It does, however, clearly make reference to gross income received from *sales* of tangible personal property. The section was so construed in *Brod-*

---

[1] Section 5458, c. 101, R.L.H. 1945:

"* * * In computing the amounts of any tax imposed under this chapter, there shall be excepted from the *gross proceeds of sales* or gross income, so much thereof as is derived from *sales of tangible personal property* in interstate and foreign commerce, which under the Constitution of the United States, the Territory is, or may hereafter be, prohibited from taxing, * * *." (Emphasis added.)

[2] Section 5455, R.L.H. 1945, as added by Act 113 (Series A-85), S.L. 1947 [now R.L.H. 1955, § 117-14(e)]:

"D-1. Tax upon sales representatives, etc. Upon every person classified as a representative or purchasing agent by chapter 98.01, *engaging or continuing within this Territory in the business of performing services for another*, other than as an employee, there is likewise hereby levied and shall be assessed and collected a tax equal to two and one-half per cent of the commissions and other compensation attributable to the services so rendered by him." (Emphasis added.)

*head* v. *Borthwick,* 37 Haw. 314,[3] wherein the court stated on page 316:

"* * * It was the intention of the legislature, as manifested by sections 2, 24, and 3 of the general excise tax law of 1935, that in the computation of the tax there be excepted from gross proceeds of sales or gross income only so much of the gross proceeds of sales or gross income derived from the sales made to the United States Government, its departments or agencies, * * *."

On this point appellant relies mainly on the case of *Williams* v. *Hamilton,* 194 Wash. 64, 76 P.2d 1029. In that case the state statute set an excise tax of 15 cents on every pound of butter substitutes sold or solicited for future delivery. Williams, the taxpayer, was an agent taking orders for Nucoa, a butter substitute. He forwarded the orders and the money received for the goods, less his retained commission, to a dealer in Portland, Oregon. The dealer filled the orders and sent the Nucoa back to Williams who, in turn, delivered it to the customers. The Washington Supreme Court invalidated the tax on grounds that it violated the interstate commerce clause of the United States Constitution.

The *Williams* case is easily distinguishable from the instant case. In the first place the tax in that case was measured on the *commodity* (15 cents on every pound of butter substitute sold or solicited), whereas in the instant case the excise tax is placed on gross income derived from *services.* Furthermore, the excise tax imposed on the commodity in that case was nearly five times greater than the commissions received by Williams.

In the second place, the test of immunity from taxation used in the *Williams* case—that the commodity was moving in interstate commerce at the moment of incidence of

---

[3] Section 3 of Act 141 (Series A-44), S.L. 1935, involved in *Brodhead* v. *Borthwick,* is the same as section 5458.

the tax—has been discarded by many courts. In *Field Enterprises, Inc.* v. *State,* 47 Wash.2d 852, 289 P.2d 1010, *aff'd* 352 U.S. 806, the Supreme Court of Washington upheld a business and occupation tax imposed upon Field Enterprises, Inc., a Delaware corporation. The court stated that sales made by the publisher through salesmen reporting to the local division office were subject to the tax, even though orders were forwarded to and accepted by the home office situated out of the state and the books shipped from out of state directly to the customer.[4]

In *Department of Treasury* v. *Allied Mills,* 220 Ind. 340, 42 N.E.2d 34, *aff'd* 318 U.S. 740, the Indiana Supreme Court sustained the imposition of a gross income tax on receipt from sales to resident customers in Indiana, even though orders were approved in Illinois and deliveries made directly to the customers.

Concluding that appellant does not come within the provisions of section 5458, the question then is whether the assessment imposed upon him for services performed in the Territory, measured by the amount of commissions that he received, violates the interstate commerce clause of the United States Constitution.[5]

On this point, appellant contends that the tax, as applied to his activities, is clearly a burden upon interstate commerce. He argues that such a tax upon one who received remuneration for engaging directly in the solicitation and inauguration of interstate transactions is in contravention of the interstate commerce clause.

---

[4] See also *United States Steel Corp.* v. *State,* 51 Wash.2d 224, 316 P.2d 1099, *appeal dismissed for want of substantial federal question,* 358 U.S. 46; *B. F. Goodrich Co.* v. *State,* 38 Wash.2d 663, 231 P.2d 325, *cert. denied,* 342 U.S 876; *International Harvester Co.* v. *Department of Treasury,* 322 U.S. 340, at pp. 346-348, being the portion of the opinion concerning the Class E sales, explaining the *Allied Mills* case, *infra.*

[5] Article I, Section 8, Constitution of the United States, provides in part: "The Congress shall have Power * * * To regulate Commerce * * * among the several States * * *."

Appellant's contentions must be qualified. He assumes that all state action affecting interstate transactions violate the commerce clause. As stated in *Nippert* v. *City of Richmond,* 327 U.S. 416 on page 425:

"As has been so often stated but nevertheless seems to require constant repetition, not all burdens upon commerce, but only *undue* or *discriminatory* ones, are forbidden. * * *"[6] (Emphasis added.)

Thus, to determine whether the tax in question is in violation of the commerce clause, we must determine whether it is *discriminatory* or places an *undue burden* upon interstate commerce.

We are of the opinion that the tax in question is not discriminatory. The tax imposed by subsection D-1, section 5455, R.L.H. 1945,[7] at the rate of 2½% is identical to that of any other service business carried on within the Territory. The general classificiation of tax on "service business" is provided for in subsection E of the same section.[8] Thus, even if there were no subsection D-1, or even if appellant did not fall within that subsection, it is clear that he would be taxed under subsection E. Subsection D-1 simply makes clear that the tax imposed on the manufacturer's representative is to be confined to his own services and that he is not to be classed as a distributor.

The tax in question is therefore not discriminatory for it is levied upon all persons engaged in the business of

---

[6] *Cf., Postal Tel.-Cable Co.* v. *City of Richmond,* 249 U.S. 252, 259; *Western Live Stock* v. *Bureau of Revenue,* 303 U.S. 250, 254; *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 U.S. 33, 46; *Nelson v. Sears, Roebuck & Co.,* 312 U.S. 359.

[7] See footnote 2, *supra.*

[8] Section 5455, R.L.H. 1945, as amended [now R.L.H. 1955, § 117-14 (f)]:

"E. Tax on service business. Upon every person engaging or continuing within this Territory in any service business or calling not otherwise specifically taxed under this chapter, there is likewise hereby levied and shall be assessed and collected a tax equal to two and one-half per cent of the gross income of any such business."

selling goods or rendering services in the Territory of Hawaii at the same rate. The decision of the Tax Appeal Court is in accord with this conclusion when it stated that "this court cannot find that the tax, as such, is discriminatory against the type of business run by Appellant."

We are also of the opinion that the tax in question does not place an undue burden on interstate commerce. The fact that the services performed by appellant are in aid of interstate sellers does not invalidate the tax involved. The rule applicable to stevedoring services, that of giving tax immunity to those businesses that give aid to carriers,[9] has been narrowly limited and is not applicable to services such as those involved in the instant case, which are rendered in aid of those who sell goods across state lines.[10]

The case of *Ficklen* v. *Shelby County Taxing Dist.*, 145 U.S. 1, shows the inapplicability of the rule in stevedoring cases to interstate sellers. The *Ficklen* case involved two brokers who solicited orders and forwarded them to foreign firms who then filled the orders and shipped the goods directly to the purchasers. The brokers challenged the state statute which imposed on every person dealing in

---

[9] *Joseph* v. *Carter & Weekes Stevedoring Co.*, 330 U.S. 422; *Puget Sound Stevedoring Co.* v. *State Tax Comm'n*, 302 U.S. 90.

[10] In *Gross Income Tax Div.* v. *J. L. Cox & Son*, 227 Ind. 468, 86 N.E.2d 693, the court distinguished stevedoring as different from the work of unloading freight from railroad cars, and did not extend the stevedoring rule even to that area. See also *Stone* v. *Dunn Bros., Inc.*, 224 Miss. 762, 80 So.2d 802, 81 So.2d 712 and *Convoy Co.* v. *Taylor*, 53 Wash.2d 439, 334 P.2d 772.

In *Interstate Oil Pipe Line Co.* v. *Stone*, 337 U.S. 662, the majority of the court differed as to whether the business of transporting oil from the oil fields and shipping it by rail as agent of the owner-producer was interstate commerce but agreed that a tax on gross receipts from these services was valid.

In *Mohegan Int'l Corp.* v. *City of New York*, Sup. Ct., 184 N.Y.S.2d 142, it was held that an ocean freight forwarder who, on behalf of exporters or importers, performed various services required to coordinate the movement of freight from inland points to ocean carriers, was subject to the New York City "general business tax" upon its gross receipts from that business.

cotton or any other articles a license tax of $50 a year and in addition a tax of 10 cents on each $100 of capital invested, or if having no capital invested, then $2\frac{1}{2}\%$ on the gross commissions earned during the year. The provision relating to $2\frac{1}{2}\%$ on commissions applied since they had no capital invested. They filed for renewal of licenses by tendering payment of $50 license fee but were refused on grounds that they had not paid gross income tax on commissions received for the previous year. They, therefore, filed a bill to restrain the collection of the gross income tax and also to prevent any interference with their current business, contending that the tax imposed therein violated the interstate commerce clause. The defendant demurred to the bill, and the demurrer was sustained by the Tennessee Supreme Court. The Supreme Court of the United States affirmed the decision stating on page 24:

"* * * it is difficult to see why a citizen doing a general business at the place of his domicil should escape payment of his share of the burdens of municipal government because the amount of his tax is arrived at by reference to his profits. This tax is not on the goods, or on the proceeds of the goods, nor is it a tax on nonresident merchants; and if it can be said to affect interstate commerce in any way it is incidentally, and so remotely as not to amount to a regulation of such commerce.

"We presume it would not be doubted that, if the complainants had been taxes on capital invested in the business, such taxation would not have been obnoxious to constitutional objection; but because they had no capital invested, the tax was ascertained by reference to the amount of their commissions, which when received were no less their property than their capital would have been. * * *"

The ruling of the Supreme Court of the United States

in *Western Live Stock* v. *Bureau of Revenue,* 303 U.S. 250, leaves little doubt in our minds that the fact that services are performed in aid of interstate sellers does not invalidate the tax per se. On this point, the Supreme Court states on pages 253-254:

"That the mere formation of a contract between persons in different states is not within the protection of the commerce clause, at least in the absence of Congressional action, * * *.

"It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. 'Even interstate business must pay its way.' * * *."

The Court further stated on page 256:

"* * * Taxation measured by gross receipts from interstate commerce has been sustained when fairly apportioned to the commerce carried on within the taxing state, * * * and in other cases has been rejected only because the apportionment was found to be inadequate or unfair. * * *"[11]

Appellant relies upon the case of *Robbins* v. *Shelby*

---

[11] See *Gwin, White & Prince, Inc.* v. *Henneford,* 305 U.S. 434, wherein the United States Supreme Court reversed the state court's decision holding that the tax assessed upon appellant's entire gross revenue infringed the interstate commerce clause since it was not fairly apportioned to the services performed within the state.

For a case interpreting the *Gwin* case as being one where the activities were performed in many states but the tax was not apportioned to the activities within the state, see *Fairport Storage & Ice Corp.* v. *Smith,* 280 App.Div. 613, 117 N.Y.S.2d 430, holding that a cold storage company holding vegetables and fruits for shipment out of the state is taxable upon its services. See also *National Schools* v. *City of Los Angeles,* 135 Cal.App.2d 311, 287 P.2d 151.

Compare *Scripto* v. *Carson,* 362 U.S. 207, where the Supreme Court upheld a Florida use tax on products shipped into Florida by a Georgia corporation which was also responsible for the collection of the tax from its Florida purchasers.

*County Taxing Dist.,* 120 U.S. 489. That case is easily distinguishable for a fixed-sum license tax was involved in that case,[12] whereas in the instant case no such tax is in dispute. The license fee of $1 per year imposed in the instant case is not a burdensome flat-sum license tax. In fact in *Whitmore* v. *Ormsbee,* 329 U.S. 668, *affirming per curiam* (D.N.M.) 64 F.Supp. 911, the court agreed that the requirement of paying an annual license of $1 was merely a registration requirement.

Thus, we are of the opinion that appellant does not come within the provision of section 5458 which exempts him from paying the excise tax in question; and that the tax in question is not discriminatory and does not place an undue burden on interstate commerce.

Accordingly, the decision of the Tax Appeal Court is affirmed.

*Edward Berman* for appellant.

*Shiro Kashiwa,* Attorney General, and *Nobuki Kamida,* Deputy Attorney General, for appellee.

---

[12] See *McGoldrick* v. *Berwind-White Coal Mining Co., supra,* where the Court compares *Robbins* v. *Shelby County Taxing Dist., supra,* with *Ficklen* v. *Shelby County Taxing Dist., supra,* limiting the rule in the *Robbins* case to fixed-sum license taxes.