ALEX MCKEIGNEY, CHAIRMAN, STATE TAX COMM. *v.* DUNN BROTHERS, INC.

No. 39731 June 13, 1955 80 So. 2d 802

July 15, 1955 81 So. 2d 712

764

*John E. Stone,* Jackson, for appellant.

*Butler, Snow, O'Mara, Stevens & Cannada,* Jackson, for appellee.

LEE, J.

This is an appeal by A. H. Stone, Chairman of the State Tax Commission, from a judgment of the circuit court of the First Judicial District of Hinds County, requiring him to refund to Dunn Bros., Inc., the sum of $557.93.

The controversy arose in this way: The tax commission demanded of Dunn Bros., Inc., the payment of $557.93, being a sales tax of two percent on its gross income of $27,896.45, from its operation entirely within the State of Mississippi. The corporation paid the assessment, under protest, and then brought this action to recover, with the above mentioned result.

After the case reached this Court, A. H. Stone died; and Alex McKeigney has succeeded to the office, and the cause has been revived in his name.

The statutes under which this tax was demanded and collected are Sections 10,105 and 10,109, Code of 1942. Section 10,105 is as follows: "There is hereby levied and shall be collected annual privilege taxes, measured by the amount or volume of business done, against the persons, on account of the business activities, and in the amounts to be determined by the application of rates against values, or gross income, or gross proceeds of sales, as the case may be, as follows:"

The applicable part of Section 10,109 is as follows: "Upon every person engaging or continuing within this state in the business of operating an express business, transporting freight or passengers from one point to another in this state, there is likewise hereby levied and shall be collected a tax, on account of the business engaged in, equal to two per cent of the gross income of the business. * * * There shall be excepted from the gross income used in determining the measure of the tax imposed in this section so much thereof as is derived from the business conducted in commerce between this state and other states of the United States."

The cause was tried upon an agreed statement of facts in substance as follows: During the year 1951, Tennessee Gas Transmission Company was constructing an extension to its pipe line, which crossed several states, including the State of Mississippi. It purchased the necessary pipe for this purpose from a foundry in the State of California, and desired to have the same delivered by common carriers on its right of way in Mississippi. To effectuate this purpose, it made arrangements with a railroad company to deliver the pipe from the foundry to certain depots, or railheads, in the State of Mississippi, as near to its right of way as was feasible. It also engaged Dunn Bros., Inc., a Texas corporation, holding a certificate of public convenience and necessity for interstate and foreign commerce from the Interstate Commerce Commission, but without such certificate from the Mississippi Public Service Commission for intrastate

commerce in the State of Mississippi, to deliver the pipe, by motor truck, from the depots or railheads in Mississippi to its right of way and string the same along the said right of way. The Transmission Company, as consignor, shipped the pipe by railroad to itself as consignee to the several depots or railheads in Mississippi. Bills of lading were issued accordingly. The delivering railroad did not, of course, parallel the Transmission Company's right of way. The Transmission Company paid freight thereon; and when a shipment arrived at its rail destination, one of the Transmission Company's agents inspected and accepted the same. Dunn Brothers then took charge of the shipment, and after giving a receipt to the railroad company for and on behalf of the Transmission Company as both consignor and consignee, unloaded the car and delivered the pipe along the right of way, for which service the Transmission Company paid them. In the agreed statement of facts, Dunn Brothers said that the purpose of the inspection by an agent of the Transmission Company was to determine whether there had been any damage to the shipment in transit by the railroad company. This hauling was done between March and May 1951. Dunn Brothers had no property in the state except its equipment; and as soon as the job was completed, it moved the equipment out of the state.

The question is whether or not this transportation was interstate or intrastate; and in either event, whether or not it was subject to the tax in question.

The Federal cases on this question are legion. There are also a number of our own cases.

In the recent case of Coleman, Attorney General v. Trunkline Gas Company, (Miss.), 63 So. 2d 73, in recognition of the Federal rule, this Court held that a privilege tax which was imposed upon a pipe line operator, whose operations were wholly and exclusively in interstate commerce, was violative of the commerce clause of the Federal Constitution, and fell outside the field of legitimate state taxation. This decision involved a construction of

Section 34, Chapter 138, Laws of 1934, as amended by Chapter 410, Laws of 1952, which undertook to levy a privilege on a mileage basis on account of the state's protection. The record disclosed, however, that the gas company paid a franchise tax, an income tax, and an ad-valorem tax, and the Court held that, in so doing, it was already entitled to the state's protection.

The Federal courts have repeatedly held that state taxes cannot be collected upon the privilege of carrying on a business that is exclusively interstate in character. Spector Motor Service v. O'Connor, Portland Cement Co., 340 U. S. 602, 71 S. Ct. 508, 95 L. Ed. 573; Alpha Portland Cement Co. v. Massachusetts, 268 U. S. 203, 69 L. Ed. 916, 45 S. Ct. 477; Ozark Pipe Line Corp. v. Monier, 266 U. S. 555, 69 L. Ed. 439, 45 S. Ct. 184.

It was pointed out in the opinion in the Spector Motor Service case, supra, that "The objection to its validity does not rest on a claim that it places an unduly heavy burden on interstate commerce in return for protection given by the State. The tax is not levied as compensation for the use of highways or collected in lieu of an ad valorem property tax. Those bases of taxation have been disclaimed by the highest court of the taxing State. It is not a fee for an inspection or a tax on sales or use. It is a 'tax or excise' placed unequivocally upon the corporation's franchise for the privilege of carrying on exclusively interstate transportation in the State."

In Interstate Oil Pipe Line Company v. Stone, 203 Miss. 715, 35 So. 2d 73, which had under consideration Sections 10,105 and 10,109, Code of 1942, Annotated, though a different paragraph of Section 10,109, supra, it was held that the tax there involved was on income derived from the transportation of oil by the pipe line from wells to shipping points and for pumping the oil into tank cars for shipment by rail out of the state. The opinion quoted from 11 Am. Jur., Commerce, Section 28, p. 29, as follows: "It is not within the power of the parties by the form of their contract to convert what is ex-

clusively a local business, subject to state control, into an interstate business, protected by the commerce clause."

The quotation from the text was documented by Federal Compress & Warehouse Co. v. McLean, 291 U. S. 17, 78 L. Ed. 622, 54 S. Ct. 267; Superior Oil Co. v. Mississippi, 280 U. S. 390, 74 L. Ed. 504, 50 S. Ct. 267; Browing v. Waycross, 233 U. S. 16, 58 L. Ed. 828, 34 S. Ct. 578. The opinion also cited 15 C. J. S., Commerce, Section 18, pp. 278-291, to the same effect. The Court observed that "the oil was not committed by the owner to this pipe line company for transportation to another state, but to be transported to the railroad and there loaded into tank cars." The opinion then cited Coe v. Errol, 116 U. S. 517, 29 L. Ed. 715, 6 S. Ct. 475, 479, to show that the carrying of articles in carts or other vehicles to the depot, where the journey is to commence, is no part of the journey; and likewise the carrying of articles from the farm or forest to the depot is only an interior movement.

On the Pipe Line's appeal the Supreme Court of the United States affirmed. Interstate Oil Pipe Line v. Stone, 337 U. S. 662, 93 L. Ed. 1613, 69 S. Ct. 1264.

Four of the Justices in an opinion written by Justice Rutledge said: "We do not pause to consider whether the business of operating the intrastate pipe lines is interstate commerce, for, even if we assume that it is, Mississippi has power to impose the tax involved in this case. Further, we do not find it necessary to dispute that the Supreme Court of Mississippi construed the statute as imposing a tax on the privilege of operating a pipe line wholly within the state, and not a tax solely upon the 'local activities of "maintaining, keeping in repair, and otherwise in manning facilities"' situated in Mississippi, Memphis Natural Gas Co. v. Stone, 335 U. S. 80, 92, 93, 92 L. Ed. 1832, 1842, 1843, 68 S. Ct. 1475, or upon the gross receipts themselves, Central Greyhound Lines v. Mealey, 334 U. S. 653, 92 L. Ed. 1633, 68 S. Ct. 1260. While we are of course bound by the con-

struction given a state statute by the highest court of the State, we are concerned with the practical operation of challenged state tax statutes, not with their descriptive labels.'' The opinion also said: ''Since all the activities upon which the tax is imposed are carried on in Mississippi, there is no due process objection to the tax. The tax does not discriminate against interstate commerce in favor of competing intrastate commerce of like character. The nature of the subject of taxation makes apportionment unnecessary; there is no attempt to tax interstate activity carried on outside Mississippi's borders. No other state can repeat the tax. For these reasons the commerce clause does not invalidate this tax.'' Justice Burton concurred in the result on the ground that the imposition ''was a tax on the privilege of operating a pipe line for transporting oil in Mississippi in intrastate commerce and that, as such, it was a valid tax.'' Justice Reed in the dissenting opinion, among other things, observed that ''An interstate journey must have a beginning and an end. Common sense rejects an extension of the journey to the traveler's front door or the producer's farm or factory when no through order for carriage is in effect. The exact limits of interstate commerce in such fringe situations are uncertain. * * * This Court has interpreted the commerce clause to permit state nondiscriminatory taxation for the use of state facilities, upon the property used in interstate commerce, upon production for commerce and upon net proceeds therefrom. Through such taxes, the states may exact payment for their protection and encouragement of commerce. Joseph v. Carter & W. Stevedoring Co., 330 U. S. 422, 429, 91 L. Ed. 993, 1001, 67 S. Ct. 815, and cases cited.''

The only factual difference between the case of Interstate Oil Pipe Line v. Stone, supra, and the case now before the Court is that, in that case, the tax on income was derived from the transportation of oil from wells to the shipping points and pumping the same into the

tank cars for shipment by rail out of the state — at the beginning of the journey — whereas the tax here was imposed on income which was derived from hauling pipe from the railhead to the right of way — at the end of the journey.

In Stone v. Memphis Natural Gas Co., 201 Miss. 670, 29 So. 2d 268, the appellee was held to be liable for the state franchise tax, although its business was solely and exclusively interstate, and it was not engaged in any intrastate business. The Court said that the franchise tax was not one upon "doing business" as that term is ordinarily understood. The opinion pointed out that there was "no attempt to tax interstate commerce as such, but the levy is an exaction which the State requires as a recompense for its protection of lawful activities carried on in this State by the corporation, foreign or domestic, activities which are incidental to the powers and privileges possessed by it by the nature of its organization — here the local activities in maintaining, keeping in repair, and otherwise in manning the facilities of the system throughout the 135 miles of its line in this State."

On the Gas Company's appeal, the decision of this Court was affirmed by the Supreme Court of the United States. Memphis Natural Gas Co. v. Stone, 335 U. S. 80, 92 L. Ed. 1832, 68 S. Ct. 1475. Three of the Justices held that the tax, under the construction of this Court, was additional recompense for protection of the pipe line's local activities, and could not therefore be regarded as one on the privilege of doing interstate business; that the activities taxed were not under the protection of the commerce clause; and that the burden of such tax was no more unreasonable than the permissible ad valorem tax. A fourth Justice held that the tax was within the territorial limits of the state's taxing power; that it placed no greater burden upon interstate commerce than the state places upon competing intrastate commerce of like character; that it did not undertake to tax interstate activities carried on outside of the state's

border; and that it could not be repeated by another state. The fifth Justice concurred in the result.

The language of Justice Reed, in his dissenting opinion in Interstate Oil Pipe Line Company v. Stone, supra, namely, that "an interstate journey must have a beginning and an end," must be kept in mind; likewise the opinion of the Supreme Court in Coe v. Errol, supra, that the carrying of articles in cars or other vehicles to the depot, where the journey is to commence, is no part of the journey; and that the carrying of articles from the farm or forest to the depot is only an interior movement. Again, the language of Justice Reed, in his dissenting opinion, supra, should be recalled, namely, that "common sense rejects an extension of the journey to the traveler's front door or to the purchaser's farm or factory when no through order for carriage is in effect." He again well said that "the exact limits of interstate commerce in such fringe situations are uncertain."

 █ If the above reasoning is followed, the journey in interstate commerce in this case began at the railroad's depot in the State of California. The transportation of the pipe from the foundry to the depot was only an interior movement. The Transportation Company was the shipper. It consigned the shipment from a point in California to itself at a point in Mississippi. The railroad company, the interstate carrier, issued its bill of lading to the Transmission Company, as both consignor and consignee, showing its agreement to deliver the shipment from a depot in California to a railroad depot, or railhead in the State of Mississippi. When the shipment arrived at is destination, the Transmission Company, by an agent, inspected and accepted it. Following this acceptance, Dunn Brothers took over the shipment from the railroad. This was, in effect, a delivery to the Transmission Company. The interstate journey was then at an end. The railroad company, the interstate carrier, had agreed to deliver the shipment from a point in California to a point in Mississippi, and this agreement of

carriage had been fully performed. The Transmission Company then engaged another carrier, a motor carrier, Dunn Brothers, to deliver the shipment from the depot, or railhead, along its right of way; and the fact that this procedure had been agreed upon, prior to the railroad's delivery, did not change the essential features of the activity. Nor did the fact that Dunn Brothers held a certificate as a carrier for interstate commerce grant it immunity, when it was carrying intrastate commerce exclusively. It is only for the carriage within Mississippi that the tax is demanded. A local drayman or an intrastate carrier would have been obliged to pay the tax here demanded. If, under the circumstances of this case, appellee should prevail, then by reason of its claim of interstate commerce, it would escape the burdens which fall on its competitors in intrastate commerce. (Hn 2) Evidently equality for, not favoritism to, interstate commerce was the underlying purpose of Article I, Section VIII, cl. 3, of the U. S. Constitution.

The case of Gross Income Tax Division v. J. L. Cox & Son, 86 N. E. 2d 693, from the Supreme Court of Indiana, is directly in point.

The case of American Express Co. v. Miller, 104 Miss. 247, 61 So. 306, is not in point. In that case, the packages were delivered by the liquor dealers in Louisiana to the boats, and the masters issued bills of lading for the entire journey, across the state line, to the customers in Mississippi, collecting at the time the charge for the completed transportation, with no opportunity or right of the original shipper thereafter to accept or control the shipment. The transportation was continuous from the shipper to the consignee.

There is this additional reason to uphold this tax: The agreed statement of facts showed that Dunn Brothers made its deliveries between March and May of 1951; and that, as soon as the work was completed, it moved its equipment out of the state. Taxable property is assessed for ad valorem taxes, and the lien thereon

attaches as of January 1st. Sections 9744-5, Code of 1942. Consequently Dunn Brothers was not liable for, and could not be required to pay, ad valorem taxes for 1951. There was no agreement or proof that it paid to the State of Mississippi any tax whatever. It had the protection of the laws of Mississippi in its operations and yet it is not shown to have paid the state anything "as a recompense for its protection of lawful activities carried on in this state by the corporation." Stone v. Memphis Natural Gas Co., supra. Interstate transportation should bear a fair share of the cost of the local government whose protection it enjoys. ■■ Many decisions of the Supreme Court of the United States show that, so far as the commerce clause is concerned, state taxes may be validly laid on corporations which carry on local activities sufficiently separate from intrastate commerce, even though such taxes amount to the same as if levied on the interstate business itself. Independent Warehouses v. Scheele, 331 U. S. 70, 91 L. Ed. 1346, 67 S. Ct. 1062; McGoldrick v. Berwind-White Coal Min. Co., 309 U. S. 33, 84 L. Ed. 565, 60 S. Ct. 388, 128 A. L. R. 876; Ford Motor Co. v. Beauchamp, 308 U. S. 331, 84 L. Ed. 304, 60 S. Ct. 273; Southern P. Co. v. Gallagher, 306 U. S. 167, 83 L. Ed. 586, 59 S. Ct. 389; Coverdale v. Arkansas-Louisiana Pipe Line Co., 303 U. S. 604, 82 L. Ed. 1043, 58 S. Ct. 736; Utah Power & L. Co. v. Pfost, 286 U. S. 165, 76 L. Ed. 1038, 52 S. Ct. 548; Western Cartridge Co. v. Emmerson, 281 U. S. 511, 74 L. Ed. 1004, 50 S. Ct. 383; Hump Hairpin Mfg. Co. v. Emmerson, 258 U. S. 290, 66 L. Ed. 622, 42 S. Ct. 305; and American Mfg. Co. v. St. Louis, 250 U. S. 459, 63 L. Ed. 1084, 39 S. Ct. 522. See also Stone v. Stapling Machines Co. (Miss.), 71 So. 2d 205, which the Supreme Court of the United States refused to review. See also Mavar Shrimp & Oyster Co., Ltd., (Miss.), 73 So. 2d 109.

■■ So, the service by Dunn Brothers in carrying the pipe, after its acceptance by the Transmission Company, from the depot or railhead in Mississippi to the

right of way also in Mississippi, was an activity wholly within the State of Mississippi, was therefore intrastate, and the gross income therefrom was subject to the tax of two per cent. However if it may be said that this was a fringe situation and therefore uncertain, nevertheless the appellee is still liable for this tax as a recompense for the protection which it was afforded by the state as it engaged in this activity. Thus, for both reasons, as above stated, the tax was properly assessed and collected. Hence the judgment of the trial court is reversed, and a judgment will be entered here for the appellant.

Reversed and judgment here for appellant.

*Roberds, P. J.,* and *Holmes, Arrington* and *Ethridge, JJ.,* concur.

### ON SUGGESTION OF ERROR

HOLMES, J.

The original opinion in this case, held, first, that the service by Dunn Brothers, in carrying the pipe from the depot or railhead in Mississippi to the right of way, also in Mississippi, was intrastate, and that the gross income therefrom was subject to the tax of 2%; and, secondly, that, even if such service was in fact not intrastate, nevertheless Dunn Brothers was liable for the tax as a recompense for the benefit and protection which the State afforded to the taxpayer while it was engaged in this activity.

The appellee has filed a vigorous suggestion of error. Due consideration has been given to it; and the Court deems it necessary to respond only to some of the reasons which are urged in connection with the second ground of the opinion.

It is contended that the Court erred in assuming that the taxpayer had in fact paid no taxes to the State, when the stipulation was silent about this matter. The original declaration charged that the plaintiff had "promptly paid any and all lawful taxes levied by the State of Mis-

sissippi against its property * * *''. The Tax Commission answered that it ''does not know what taxes, if any, plaintiff has paid to the State of Mississippi, but specifically denies that plaintiff has promptly paid any and all lawful taxes levied by the State Tax Commission against its property * * *''. In the stipulation, which contained the agreed statement of facts, there was no reference whatever to tax payments.

██ ██ Since the suit by Dunn Brothers was for the purpose of recovering taxes which it had paid under protest, it of course had the burden of showing that it was entitled to a recovery. ██ ██ In Coleman, Attorney General v. Trunk Line Gas Company, Miss., 63 So. 2d 73, the gas company proved that it had paid a franchise tax, an income tax, and an ad valorem tax. The Court, in that case, held that the company, by reason of the payment of these taxes, was already entitled to the State's protection, and that the privilege tax there involved could not be imposed for such purpose. Thus evidence of payment of other taxes was relevant on the question as to whether or not Dunn Brothers was entitled to recover the taxes which it had previously paid under protest. ██ ██ But, as stated, it offered no proof as to payment of other taxes. So even if the appellee had in fact paid other taxes, still in the absence of proof thereon, it was not a violent inference that the appellee had paid no taxes. Cases must be reviewed on the record before the appellate court.

As stated in the original opinion, the tax was collected under Sections 10105 and 10109, Code of 1942 annotated. The latter section is comprised of nine paragraphs, the last of which contains a provision for certain exceptions or limitations. None of the paragraphs are numbered. It is true that the argument for and against the imposition of this tax revolves around the paragraph which reads as follows: ''Upon every person engaging or continuing within this state in the business of operating an express business, transporting freight or passengers

from one point to another in this state, there is likewise hereby levied and shall be collected a tax, on account of the business engaged in, equal to two per cent of the gross income of the business.'' Obviously this paragraph was very pertinent in dealing with the intrastate feature.

But in the same section and subsequent to the above quotation is another paragraph which reads as follows: ''Upon every person engaging or continuing within this state in the business of operating motor vehicles on the public highways of this state for the transportation of persons or property for compensation or hire, there is likewise hereby levied and shall be collected a tax, on account of the business engaged in, equal to two per cent of the gross income of the business; but such tax shall not apply to persons engaged in transporting school children under contract with counties or school districts.'' This paragraph applies to the operation of motor vehicles for the transportation of persons or property for compensation or hire on the public highways of the State, and is not limited merely by such transportation from one point in the State to another. Consequently it is more far reaching than the first quoted paragraph.

The last paragraph of Section 10109, the exception or limitation paragraph, is as follows: ''There shall be excepted from the gross income used in determining the measure of the tax imposed in this section so much thereof as is derived from the business conducted in commerce between this state and other states of the United States, or between this state and foreign countries which the State of Mississippi is prohibited from taxing under the constitution of the United States of America. And nothing contained in this section shall be construed to levy a tax upon the operation by municipal corporations of any electric, gas or water system owned by municipality operating it.'' The evident purpose of the Legislature was to tax all gross incomes, in the enumerated in-

stances, except so much thereof as is derived from interstate commerce between this State and other states or foreign countries, which the State is prohibited from taxing under the Constitution of the United States. But the tax here in question is not prohibited by the Constitution of the United States. See the many citations in the original opinion.

The mere fact that the parties confined their argument to the first quoted paragraph does not preclude the Court from considering the entire section.

We adhere to the views expressed in the original opinion, and it follows that the suggestion of error should be, and is, overruled.

Suggestion of error overruled.

*Roberds, P. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.