HC&D MOVING & STORAGE COMPANY, INC., A HAWAII CORPORATION; CITY TRANSFER COMPANY, LTD., A HAWAII CORPORATION; Y. HIGA ENTERPRISES, LTD., A HAWAII CORPORATION; HAWAIIAN HAULING SERVICES, LTD., A HAWAII CORPORATION; HC&D MOVING & STORAGE COMPANY, INC., A HAWAII CORPORATION *v.* HAROLD YAMANE, STATE TAX COLLECTOR, FIRST TAXATION DIVISION.

No. 4397.

August 4, 1965.

Tsukiyama, C.J., Cassidy, Wirtz, JJ., and Circuit Judge Tashiro in Place of Lewis, J., Disqualified, and Circuit Judge Kitaoka in Place of Mizuha, J., Disqualified.

OPINION OF THE COURT BY WIRTZ, J.

This appeal is taken from the consolidated judgment entered in five tax cases in the Circuit Court of the First Circuit.[1] The State, pursuant to Chapter 117, Revised Laws of Hawaii 1955, as amended, levied and assessed general excise taxes at the rate of $3\frac{1}{2}\%$ on the income (gross receipts) arising out of the transactions hereinafter described. Plaintiffs-appellants, claiming the assessment was unconstitutional, sued defendant-appellee, the State Tax Collector, for the refund of these taxes which were paid under protest. Except as below noted, the judgment was against each of the taxpayers in all cases.[2]

Taxpayers were all engaged in the general trucking business in the State of Hawaii, hauling goods by truck to and from the various piers in Honolulu, and in the instance of Hawaii Hauling Services, Ltd., from Honolulu International Airport as well, and the various places of residences or places of business of the consignees. For these trucking services, as well as for accessorial services, involving packing, unpacking and crating, and for storage

---

[1] Civil Nos. 9476, 9724, 10510, 10561 and 10562.

[2] The exception is as to Y. Higa Enterprises, Ltd., under the second count of the complaint in Civil No. 10510, where the State sought to tax gross receipts of activities of the taxpayer admittedly outside the State of Hawaii and in interstate commerce. These activities involved shipments between the United States mainland and Guam, Okinawa, Japan and the Philippines. It was stipulated that such gross receipts were beyond the reach of the State and the tax was invalid. Judgment was entered for the taxpayer as to this count. However, the tax reflected in the first count of the complaint and in the remaining four cases were on the transactions hereinafter described and are the subject of this appeal.

in transit (temporary storage in their warehouses) pending determination of the ultimate destination of the goods, they received the compensation which is the object of the tax in question in this case.

Essentially, the transactions here under scrutiny concern shipments originating at a point in Hawaii and going to a point on the mainland of the United States and vice versa, that is, those originating at a point on the mainland of the United States and going to a point in Hawaii. All shipments were on through bills of lading issued by mainland carriers, such as Beacon Van Lines, Lyon Van Lines, Mayflower Transit Company, National Carloading Corporation, to name a few. In all cases, except as to Hawaii Hauling Services, the transactions were largely concerned with military personnel and involved household goods under shipments originating both in Hawaii and on the mainland of the United States. In the case of Hawaii Hauling Services the shipments involved mostly commercial goods from suppliers on the mainland of the United States to local business concerns, all originating on the mainland of the United States under arrangements with Emory Air Freight, an air freight forwarder, and two surface freight forwarders, Hawaii Consolidators of Los Angeles and Hawaiian Express of San Francisco. These goods were likewise handled under through bills of lading and roughly the same services were performed as in the case of the other taxpayers.

Overseas Van, Limited, until its merger with HC&D Moving & Storage Company, Inc., and the latter corporation at the outset, limited their activities as generally above outlined. All other taxpayers and HC&D Moving & Storage Company, Inc. at a later date, likewise engaged in trucking from point to point within the State of Hawaii.

The contract for the shipment of the goods, as evidenced by through bills of lading, was entered into by the

consignor, or the military authorities where their personnel were involved, with the mainland carriers or freight forwarders for the transportation above described. To handle these transportation services on the Hawaii end of the shipment, the mainland carriers or freight forwarders entered into a separate contract with the taxpayers, the local truckers. The compensation received by the taxpayers for the services above outlined were under this contract with the mainland carriers or freight forwarders for services rendered to them in fulfilling their contract with the consignor.

There were several arrangements of compensation entered into between the mainland carriers and the taxpayers. Originally, the usual form of compensation for the haulage was a percentage of the ocean freight "override;" that is, the amount charged by the mainland carrier to the consignor in excess of the ocean freight rate of the steamship company. For the accessorial services the original arrangement was for a percentage of the charges made by the mainland carrier for such services. In both cases the percentage rate was higher for outgoing shipments, ranging from seventy to eighty per cent, than it was for incoming shipments which ranged from twenty to thirty per cent. This arrangement was later supplanted by a fixed rate by weight or measure. In addition the taxpayers received the full amount allocable to storage in transit. In some cases there was additional compensation for "booking the job" or "getting the business" by the taxpayer in Hawaii.

The tax here involved, insofar as it affects taxpayers, was levied under the following section of Chapter 117, R.L.H. 1955, as amended:

"§ 117-14. *Imposition of tax.* There is hereby levied and shall be assessed and collected annually privilege taxes against persons on account of their business and

other activities in the State measured by the application of rates against values of products, gross proceeds of sales or gross income, whichever is specified, as follows:

\* \* \* \* \* \*

"(f) Tax on service business. Upon every person engaging or continuing within the State in any service business or calling not otherwise specifically taxed under this chapter, there is likewise hereby levied and shall be assessed and collected a tax equal to three and one-half per cent of the gross income of any such business."

It is readily seen that the tax by its express terms is a privilege tax upon engaging or continuing within the State in any service business and is measured by the gross income of such business. As stated in *General Motors Corp.* v. *Washington,* 377 U.S. 436 (1964) at page 441: "For our purposes the decisive issue turns on the operating incidence of the tax." Here the operating incidence of the tax is on the privilege of doing business in Hawaii measured by the gross income received therefrom.

The trial judge characterized the tax as a "privilege tax on doing business, including the use of corporate powers in Hawaii." We do not understand this language to mean that the incidence of the tax is on the right to exercise corporate powers but rather that it is descriptive of the manner in which taxpayers, as corporations, do business, as R.L.H. 1955, § 117-2, includes the exercise of corporate or franchise powers in the definition of "engaging" in business. The fact that taxpayers are all Hawaii corporations, while not determinative on the issue of the validity of the tax, still has a bearing on the relation or *"nexus"* between the State and the business activities sought to be taxed. *Cf., Washington-Oregon Shippers Cooperative Ass'n* v. *Schumacher,* 59 Wash. 2d 159, 367 P.2d

112, *cert. denied,* 370 U.S. 937 (1962); *Spector Motor Service, Inc.* v. *O'Connor,* 340 U.S. 602 (1951); *Northwest Airlines, Inc.* v. *Minnesota,* 322 U.S. 292 (1944); *City of Chicago* v. *Willett Co.,* 344 U.S. 574 (1953).

Taxpayers resist imposition of this tax by the State as being violative of the Commerce Clause of the Constitution of the United States.[3]

Five of the six specifications of error pinpoint the contention that "* * * as applied here, [it] is a tax on the privilege of doing interstate business measured by the unapportioned gross receipts thereof" and as a result thereof "is an invalid levy." The remaining specification of error (Number 2) alternatively maintains that "corporations engaged in doing exclusively interstate business are not subject to a tax for the privilege of doing such a business whether or not such corporations are local or foreign."[4] In support of their chief contention taxpayers maintain that "the business taxed is interstate commerce" and again that "the shipments of goods here involved are in interstate commerce." Viewed in the light of the principal contract between the consignor and the mainland carrier, the shipments involved the transportation of goods from a place in one state to a place in another which bring them within the realm of interstate commerce. *Spector Motor Service, Inc.* v. *O'Connor, supra,* 340 U.S. 602 (1951); *Railway Express Agency, Inc.* v. *Virginia,* 347 U.S. 359 (1954). The fact that all of the taxpayers' activities were performed within the State of Hawaii is not

---

[3] Art. I, Sec. 8, Constitution of the United States:

"The Congress shall have Power * * *;

"To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes; * * *."

[4] This has reference to Overseas Van, Limited, in Civil No. 9476 and to HC&D Moving & Storage Company in Civil No. 10562 with respect to its incipient years of operation (1959 to 1962); operations of both of which were exclusively in cooperation with mainland carriers under the contract arrangements hereinbefore described.

necessarily significant to characterize the commerce as purely intrastate. *The Daniel Ball* v. *United States,* 10 Wall. 557, 19 L.Ed. 999 (1871).

The Tax Collector maintains that "the services performed are local activities severable from interstate commerce." Whether this is intended to mean that taxpayers' activities are not interstate commerce, or whether they are aspects of interstate commerce which may be taxed by the State is none too clear. In view of the foregoing authorities the latter is probably the intended meaning.

The determination of whether or not interstate commerce is involved does not resolve the constitutional problem presented. *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 U.S. 33, 46-47 (1940). Speaking through Mr. Justice Jackson, that case reminds us that:

> "Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, which nevertheless fall short of the regulation of the commerce which the Constitution leaves to Congress."

*Central Greyhound Lines, Inc.* v. *Mealey,* 334 U.S. 653, 655 (1948), cautions that:

> "This case serves to remind once more that courts do not adjudicate abstractions, such as, 'What is interstate commerce?' Also, it again illustrates that even if it be found that certain transactions in fact constitute interstate commerce, such conclusion does not answer the further inquiry whether a particular assertion of power by a State over such transactions offends the Commerce Clause."

The desirable objectives in determining the validity of state taxes while easy to see are often difficult to achieve. On the one hand, the "common market" created under the

Commerce Clause is not to be hampered by state taxes impeding commerce between parts of the Nation; on the other hand, it is unquestioned that interstate commerce must "pay its own way." Faced as they are with these two opposing principles, the Supreme Court of the United States frankly has acknowledged the confused status of this problem in the field of interstate commerce and their inability to lay down precise guidelines:

"* * * Commerce between the States having grown up like Topsy, the Congress meanwhile not having undertaken to regulate taxation of it, and the States having understandably persisted in their efforts to get some return for the substantial benefits they have afforded it, there is little wonder that there has been no end of cases testing out state tax levies. The resulting judicial application of constitutional principles to specific state statutes leaves much room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable power of taxation * * *." *Northwestern States Portland Cement Co.* v. *Minnesota,* 358 U.S. 450, 457 (1959).

It is without surprise then that we early find this admission of Justice Holmes in *Galveston, Harrisburg and San Antonio Ry.* v. *Texas,* 210 U.S. 217, 227 (1908), of the Court's inability to logically reconcile these conflicting objections:

"It appears sufficiently, perhaps from what has been said, that we are to look for a practical rather than a logical or philosophical distinction. The State must be allowed to tax the property and to tax it at its actual value as a going concern. On the other hand the State cannot tax the interstate business. The two necessities hardly admit of an absolute logical reconciliation."

*Interstate Pipe Line Co.* v. *Stone,* 337 U.S. 662 (1949), relied on by taxpayers as presenting the closest factual situation to the case under consideration, serves only to highlight the difficulty experienced by the Supreme Court in resolving this problem of inter-governmental relations. There, Mississippi levied a tax measured by taxpayer's gross receipts from the transportation of oil from storage tanks to railroad loading racks for shipment to out-of-state destinations. The tax was upheld by five justices, four of whom found the tax to be a constitutionally proper imposition on interstate commerce, while the remaining justice, who in finding the transaction to be intrastate commerce concurred in the result that the tax by the state was valid. The four dissenting justices found the tax unconstitutional as a tax on the privilege of carrying on interstate business.

The congressional power to regulate interstate commerce under the Constitution does not proscribe "all burdens [imposed by a state] upon commerce, but only undue or discriminating ones." *Nippert* v. *City of Richmond,* 327 U.S. 416, 425 (1946). "It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business." *Western Live Stock* v. *Bureau of Revenue,* 303 U.S. 250, 254 (1938). "Even interstate business must pay its way." *Postal Telegraph-Cable Co.* v. *City of Richmond,* 249 U.S. 252, 259 (1919).

With such principles in mind, the Supreme Court has approved property taxes on implements used in interstate commerce, *Western Union Telegraph Co.* v. *Attorney General,* 125 U.S. 530 (1888); on property devoted to interstate transportation where the taxes were fairly apportioned to the use made of it within the state, *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U.S. 18 (1891); on

net income from interstate commerce, *William E. Peck & Co.* v. *Lowe,* 247 U.S. 165 (1918), and *United States Glue Co.* v. *Oak Creek,* 247 U.S. 321 (1918); on franchises, measured by the net income of a commercially domiciled corporation from interstate commerce fairly apportioned to that attributable to the business done in the state, *Underwood Typewriter Co.* v. *Chamberlain,* 254 U.S. 113 (1920); on franchises, measured on a proportional formula on profits of a business engaged in both manufacturing and selling and where no profits result until the sale is made, *Bass, Ratcliff & Gretton, Ltd.* v. *State Tax Comm'n,* 266 U.S. 271 (1924); on personal property comprising a fleet of airplanes whose home port was in the domiciliary taxing state, despite the fact that personal property taxes were also paid on part of the fleet in other states, *Northwest Airlines, Inc.* v. *Minnesota, supra,* 322 U.S. 292 (1944); on net revenues received from interstate commerce where fairly apportioned to business activities within the taxing state, *Northwestern States Portland Cement Co.* v. *Minnesota, supra,* 358 U.S. 450 (1959); and on franchises measured by gross receipts apportioned to transportation within the state, where the franchise tax was in lieu of taxes upon intangibles or rolling stock, *Railway Express Agency, Inc.* v. *Virginia,* 358 U.S. 434 (1959).

Local taxes measured by gross receipts from interstate commerce have not fared well. They have been considered constitutionally improper and invalid, either as a tax on interstate commerce or on the privilege of engaging in interstate commerce. *Spector Motor Service, Inc.* v. *O'Connor, supra,* 340 U.S. 602 (1951). Such taxes likewise have been deemed susceptible to subjecting interstate commerce to discrimination in providing a direct commercial advantage to local business, *Memphis Steam Laundry Cleaner, Inc.* v. *Stone,* 342 U.S. 389 (1952); *Nippert* v. *City of Richmond, supra,* 327 U.S. 416 (1946);

496

or imposing the undue burden of "multiple taxation," *Michigan-Wisconsin Pipe Line Co.* v. *Calvert,* 347 U.S. 157 (1954); *J. D. Adams Mfg. Co.* v. *Storen,* 304 U.S. 307 (1938). It is well established, however, that state taxation measured by gross receipts received in interstate commerce is constitutionally proper if it is fairly apportioned and not otherwise discriminatory. *Central Greyhound Lines, Inc.* v. *Mealey, supra,* 334 U.S. 653 (1948).

The guidelines to the several states for the proper exercise of their taxing power in respect to interstate commerce are far from precise under the numerous decided cases. Justice Rutledge, in concurring with the Supreme Court's conclusions and its reasoning in *Memphis Natural Gas Co.* v. *Stone,* 335 U.S. 80, 96-97 (1948), advanced the following as a test justifying a state tax. It is proper when it "* * * places no greater burden upon interstate commerce than the state places upon competing intrastate commerce of like character; is duly apportioned, that is, does not undertake to tax any interstate activities carried on outside the state's border; and cannot be repeated by any other state."

*General Motors Corp.* v. *Washington, supra,* 377 U.S. 436, 441 (1964), states the test in this language:

"* * * In other words, the question is whether the State has exerted its power [of taxation] in proper proportion to appellant's activities within the State and to appellant's consequent enjoyment of the opportunities and protections which the State has afforded * * *."

The *General Motors* case has climaxed the search for a pragmatic, down-to-earth solution of requiring those engaged in interstate commerce to shoulder their fair share of local taxes by focusing attention on the taxpayers' local activities and benefits. Until *General Motors, supra,* the Supreme Court has resorted to strained and amorphous distinctions in sustaining local taxes imposed on inter-

state commerce. Thus, in *Railway Express Agency, Inc.* v. *Virginia, supra,* 347 U.S. 359 (1954), the Court, with four justices dissenting, struck down a license tax for the privilege of doing business in Virginia, measured by gross receipts earned in the state as a tax on the privilege of doing interstate commerce. Five years later, however, the Court, with but two justices dissenting in *Railway Express Agency* v. *Virginia, supra,* 358 U.S. 434 (1959), mindful that property within the state had early been considered a proper local incident for local taxation, sustained what amounted to the same tax previously voided, on the basis that the franchise tax measured by gross receipts now was specifically imposed "in lieu" of all property taxes. The dissent in the first *Railway Express* case and the concurring opinions of Justices Harlan and Brennan in the second *Railway Express* case point out, in effect, that "a rose by any other name smells just as sweet" and that the substance[5] rather than the formal language of the tax should govern. This realistic approach urged by the dissent and those concurring opinions has now apparently supplanted the previous formalistic means of resolving this conflict in inter-governmental relations.

Taxpayers rely principally on *Spector Motor Service, Inc.* v. *O'Connor, supra,* 340 U.S. 602 (1951) and *Railway Express Agency, Inc.* v. *Virginia, supra,* 347 U.S. 359 (1954) for the proposition that a state may not tax the privilege of engaging in interstate commerce. In both of those cases the taxpayers were engaged in the business of interstate trucking so that their fleet of trucks moved across state lines. A similar situation, through judicial interpretation of the facts, is true in *Puget Sound Steve-*

---

[5] Mr. Justice Brennan, concurring in *Railway Express Agency, Inc.* v. *Virginia, supra,* 358 U.S. 434, 447:

"To me, the more realistic way of viewing the tax and evaluating its constitutional validity is to take it as what it is in substance, a levy on gross receipts fairly apportionable to the taxing State * * *."

*doring Co.* v. *State Tax Commission,* 302 U.S. 90 (1937) and *Joseph* v. *Carter & Weekes Stevedoring Co.,* 330 U.S. 422 (1947). In *Puget Sound,* the Court considered long-shoremen to be in the same status as the crew of the ships worked and the services performed on the "same plane * * * as those at the ship's sling." (302 U.S. 93.) Further, the Court in *Joseph* did not "think that a tax on gross income from stevedoring, obviously a 'continuation of the transportation,' is a tax apportioned to income derived from activities within the taxing state." (330 U.S. 427.) Whether these cases still retain any vitality, in view of subsequent decisions[6] and the long line of cases holding that an in-state activity may be a sufficient local incident upon which a tax may be based,[7] is problematical. But, if so, then in all probability they would be limited to their peculiar factual situations. Even *Spector, supra,* left the door open in stating that "[the] State is not precluded from imposing taxes upon other activities or aspects of this [interstate] business which, unlike the privilege of doing interstate business, are subject to the sovereign

---

[6] See especially the discussion above on the two *Railway Express* cases relative to the employment of artificial distinctions.

[7] While it is impossible to discuss all of the voluminous number of decisions of the Supreme Court and draw a consistent and logical picture of what is or is not taxable by the State in this extremely complicated field of interstate commerce, a partial list of the cases showing the evolution of the taxpayers' local activities as a constitutionally proper taxable incident upon which to base a State tax might be helpful. Though the property handled by the taxpayers moved in interstate or foreign commerce the Court has sustained local taxes on the basis of activities of the taxpayer which could be considered purely or peculiarly local in character. *Western Live Stock* v. *Bureau of Revenue, supra,* 303 U.S. 250 (1938); *Coverdale* v. *Arkansas-Louisiana Pipe Line Co.,* 303 U.S. 604 (1938); *Canton R.R.* v. *Rogan,* 340 U.S. 511 (1951); *Alaska* v. *Arctic Maid,* 366 U.S. 199 (1961). For other cases where courts, having come to grips with the interstate commerce problem, have sustained the validity of the application of the local tax on account of the activities of the taxpayer, see the following:
  (a) *Business of freight forwarders—Washington-Oregon Shippers Cooperative Ass'n* v. *Schumacher, supra,* 59 Wash. 2d 159, 367 P.2d 112 (1961), *cert. denied,* 370 U.S. 937 (1962); *Mohegan International Corp.* v. *City of New York,* 9 N.Y.2d 69, 211 N.Y.S.2d 161, 172 N.E.2d 546 (1961), *cert. denied,* 366 U.S. 764

power of the State." (340 U.S. 609.) This is no more than the State seeks to do here and the taxpayers have failed to show that their activities within the State are not such incidents as can be reached by the State. *General Motors Corp.* v. *Washington, supra,* 377 U.S. 436 (1964) and *cf., Norton Co.* v. *Department of Revenue of Illinois,* 340 U.S. 534, 537 (1951).

Here, not only are taxpayers' activities all performed within the territorial limits of the State of Hawaii, but they are all local corporations incorporated under the laws of Hawaii. The assessments in question did not reach any activities which might have been performed by the taxpayers outside the State. It cannot be sufficiently emphasized that the tax assessments here are not against the mainland carriers on account of their activities measured by what they received from the consignors. Rather, the tax assessments are against the local truckers on account of their activities performed entirely and solely within the State of Hawaii measured by what they received from the mainland carriers for these activities in rendering the services contracted for by the carriers. Although the goods which they transported found their way into the stream

(1961) ; *Judson Freight Forwarding Co.* v. *Commonwealth,* 242 Mass. 47, 136 N.E. 375 (1922).

(b) *Business of transporting freight—Convoy Co.* v. *Taylor,* 53 Wash. 2d 439, 334 P.2d 772 (1959) ; *McKeigney* v. *Dunn Bros., Inc.,* 224 Miss. 762, 80 So. 2d 802 (1955), *appeal dismissed,* 350 U.S. 878 (1955) ; *Maine* v. *Grand Trunk Ry.,* 142 U.S. 217 (1891).

(c) *Business of repairing ships in interstate and foreign commerce —Martin Ship Service Co.* v. *City of Los Angeles,* 34 Cal. 2d 793, 215 P.2d 24 (1950).

(d) *Business of leasing crane to unload foreign and interstate cargo —Canton Co. of Baltimore* v. *Comptroller of the Treasury,* 231 Md. 294, 190 A.2d 92 (1963), *appeal dismissed,* 375 U.S. 58 (1963).

(e) *Business of canning and processing fish imported from foreign country—South Coast Fisheries, Inc.* v. *Department of Fish and Game,* 213 Cal. App. 2d 325, 28 Cal. Rptr. 537 (1963), *appeal dismissed,* 375 U.S, 57 (1963).

(f) *Mining of ore to be shipped in interstate commerce—Oliver Iron Mining Co.* v. *Lord,* 262 U.S. 172 (1923).

of commerce, yet the taxpayers did not physically engage in transporting these goods beyond the piers on the water-front. Taxpayers were engaged in the business of transporting household and commercial goods between points solely within the State, that is, to and from the various piers or airport and places of residence or business of the owners of the goods. In addition, they also performed locally other services, such as accessorial services in packing and unpacking the goods, storing the same, if necessary, and the necessary handling in and out of storage. It is these services rendered under contract by the taxpayers with the mainland carriers and for which they received compensation not from the shipper but from the mainland carriers that are the subject of the State's imposition. The taxpayers, in their purely local activities, utilize the streets, highways, piers and airports of the State of Hawaii. They also benefit from the protection which the State provides for local corporations. In return, they should in all fairness be required to carry their just share of the burdens of the cost of the State government. As was said in *Wisconsin* v. *J. C. Penney Co.*, 311 U.S. 435, 444 (1940), the "simple but controlling question is whether the state has given anything for which it can ask return."

In *General Motors Corp.* v. *Washington, supra,* 377 U.S. 436 (1964), Washington imposed a tax on the privilege of doing business in the state measured by sales at wholesale made within the state. The products involved were manufactured outside the state. Sales and orders from dealers in Washington were handled through four substantially independent "divisions" of the taxpayer, a Delaware corporation. Sales originate under a purchase order of estimated needs worked out between dealers and taxpayer's district managers who conducted business from their homes in Washington and made constant calls upon dealers, assisting in sales promotion, training of salesmen

and the like. Service contracts were maintained through service representatives. One division maintained a small local branch office to expedite delivery of cars for dealers. The divisions had about forty employees who were either residents of or principally employed in the state and from time to time out-of-state zone office personnel visited the local dealers. The parts division maintained warehouses in Oregon and Washington from which the local orders were filled. Taxpayer protested the tax on Oregon shipments and maintained that some of its products taxed by Washington were manufactured out of the state and already taxed there at the plant under a license tax measured by sales before shipment. In upholding the tax the Court held that a tax measured by gross receipts is constitutionally proper if fairly apportioned and that the bundle of taxpayer's corporate activities or "incidents" in Washington afforded a proper basis for imposing the tax, the evidence being sufficient to warrant the finding of a *"nexus"* between taxpayer's in-state activities and its local sales. The Court did not pass upon taxpayer's claim of "multiple taxation" in violation of the Commerce Clause because of the lack of showing as to what definite burden in a constitutional sense the St. Louis tax had placed on the identical interstate shipments by which Washington measured its tax, or that Oregon levies any tax on taxpayer's activity bearing on Washington sales. The local activities or "incidents" of the taxpayers in our present case more than meet the minimal requirements found in *General Motors* to adequately support a tax on the privilege of engaging in business within the State measured by fairly apportioned gross income.

The Hawaii general excise tax, here under attack, is not discriminatory against interstate commerce in favor of competing intrastate commerce as it applies equally and uniformly to all persons who are similarly situated.

*In re Taxes, Perry,* 46 Haw. 269, 274, 379 P.2d 336, 339 (1963) ; see also *Brodhead* v. *Borthwick,* 37 Haw. 314, *aff'd,* 174 F.2d 21, *cert. denied,* 338 U.S. 847 (1949). The amount of the tax is directly proportional to the volume of business activity within the State. It is a tax for the privilege of engaging in business in the State of Hawaii, and its measure is a fair and reasonable reflection of the value of this privilege.

Furthermore, to exempt these taxpayers from the payment of the general excise tax in the face of the payment of the same tax by other local truckers who perform nearly identical services in transporting goods between points in Hawaii, often on separate islands, and who receive in many instances nearly identical amounts of compensation, would be to discriminate against local commerce. *International Harvester Co.* v. *Department of Treasury,* 322 U.S. 340, 349 (1944). To grant such a preferential treatment to interstate commerce and to subject local commerce to such a disproportionate burden would hardly be consistent with the philosophy of equality and fairness which permeates the Constitution. The framers of the Constitution could not have intended to place interstate commerce on such an advantageous plane. "* * * Evidently equality for, not favoritism to, interstate commerce was the underlying purpose of Article I, Section VIII, cl. 3, of the U.S. Constitution." *McKeigney* v. *Dunn Bros., Inc., supra,* 224 Miss. 762, 775, 80 So. 2d 802, 807, *appeal dismissed,* 350 U.S. 878 (1955).

There has been no showing that the tax in question puts a restraint on the free flow of commerce nor that it creates an undue burden upon commerce. There is no risk of cumulative State tax burdens being imposed against taxpayers on account of their activities. Taxpayers are all local corporations engaged in activities performed strictly within the State of Hawaii. Their activities sub-

ject to the tax, not extending outside the State, cannot be seized upon as a basis for taxation by other jurisdictions. *Memphis Natural Gas Co.* v. *Stone, supra,* 335 U.S. 80, 88 (1948); *Coverdale* v. *Arkansas-Louisiana Pipe Line Co., supra,* 303 U.S. 604, 612 (1938); *Western Live Stock* v. *Bureau of Revenue, supra,* 303 U.S. 250, 260 (1938); and see *Southern Pacific Co.* v. *Gallagher,* 306 U.S. 167, 175 (1939); *Northwestern States Portland Cement Co.* v. *Minnesota, supra,* 358 U.S. 450 (1959). The activities of the taxpayers do not lend themselves to repeated multiple levies by other jurisdictions. As seen, the assessment is not against the mainland carriers whose activities carry them to many states. The assessment is only against domestic taxpayers based in the State of Hawaii on activities confined to the State. There can be no risk of cumulative burdens of taxation.

Taxpayers admit in their opening brief that the services upon which the tax in question was based were rendered only within this State. Nonetheless the contention is made that although "all of the taxpayers-appellants' activities took place in the State of Hawaii, they were compensated for their services on shipments under through bills of lading, which compensation was paid to them in part for services performed by others outside of the State and these services should have been excluded even if the tax was valid. The statute,[8] however, forbids such an ap-

---

[8] The general excise tax requires apportionment only where the taxpayer is engaged in business both within and without the State. In this connection R.L.H. 1955, § 117-18, as amended, provides:

"*Apportionment.* If any person * * * is engaged in business both within and without the State * * * and if under the Constitution or laws of the United States the entire gross income of such person cannot be included in the measure of this tax, there shall be apportioned to the State and included in the measure of the tax that portion of the gross income which is derived from activities within the State, to the extent that such apportionment is required by the Constitution or laws of the United States. * * *"

And R.L.H. 1955, § 117-19, as amended, requires that:

"*Conformity to Constitution, etc.* In computing the amounts of

portionment and is, therefore, invalid."

This rather unusual contention is premised on the arrangement under their contract with the mainland carriers whereby the taxpayers received as compensation for local hauling services a percentage of the override on the ocean freight charged to the customer as well as a percentage of the charges for accessorial services. In the cases of Overseas Van, Ltd. and HC&D Moving & Storage Company, Inc., the initial arrangement was to split the override between the mainland carriers and themselves on the basis of seventy per cent to these taxpayers for shipments originating in Hawaii and thirty per cent for shipments arriving in Hawaii. This was compensation for hauling or what is termed "the live haul." In addition, the charges for accessorial services were split on a basis of eighty per cent to these taxpayers for originating shipments and twenty per cent for arriving ones.[9] In either event of outgoing or incoming shipments, these taxpayers argue that "a tax would be levied on a larger amount of receipts than were represented by the payments made by the shipper for services in Hawaii." This may be so, but, without tilting with mathematical calculations it should be remembered that the mainland carriers who, upon payment by the shipper of all services connected with the shipment, compensated

---

any tax imposed under this chapter, there shall be excepted or deducted from the values, gross proceeds of sales or gross income so much thereof as, under the Constitution and laws of the United States, the State is prohibited from taxing, but only so long as and only to the extent that the State is so prohibited."

9 Subsequently during the assessment period this arrangement was abandoned and a flat fee per hundred weight was agreed upon by the carriers and these taxpayers by taking the average of the compensation under the percentage formula. Taxpayers City Transfer Company, Ltd. and Y. Higa Enterprises, Ltd. never were under this percentage formula arrangement for compensation but were paid for their services throughout the assessment period on the basis of a flat fee per hundred weight. Taxpayer Hawaiian Hauling Services, Ltd. was compensated, throughout the assessment period, by a flat fee "on the basis of weight or measurement, whichever is greater but in 90% of the movement the rate will be by cubic measurement."

the taxpayers for what they felt, under a formula arrangement, represented the reasonable value of the local services. It is inconceivable that these carriers, dealing at arms' length, would negotiate a fee for the taxpayers that included something for nothing. Business, under the free enterprise system, just does not operate that way to warrant survival. This became increasingly clear when the fee to these taxpayers based on weight was substituted for the percentage formula as the testimony shows that "ostensibly, for all practical purposes, it was just about the same thing but for ease of bookkeeping it became a hundred weight figure."

The record shows that taxpayers received a fee from the mainland carriers for the hauling and delivery service on the basis of either a percentage of the override on the ocean shipment or a flat fee per hundred weight (or cubic measurement in the case of Hawaiian Hauling Services, Ltd.). They received an additional and separate fee for accessorial service, storage in transit, and handling in and out of storage. The trial judge was not in error in concluding that the manner of arriving at the amount which taxpayers received for their services was not material to the issue.[10] The assessments of these fees received by the taxpayers reflect only compensation received for services performed locally in Hawaii. No attempt is made here to tax the gross receipts received from the consignor of the goods shipped under the through bills of lading, nor of any of such receipts for any services performed outside

[10] The trial judge's decision, in all of the cases, contained language comparable to that set out in Civil No. 10510 as follows:

"Because Plaintiff was a Hawaii corporation doing business in Hawaii only, no one could sensibly apportion Plaintiff's gross income between Hawaii and some other place or government. All Plaintiff's gross income came from business it did in Hawaii only. No other state or territory and no foreign country could tax Plaintiff. There was no need to apportion, no state, territory or foreign country to apportion with. [Citations]"

the State.[11] Whatever gross receipts of taxpayers were assessed, they reasonably reflect, under their contracts with the mainland carriers, the services performed by them under these contracts solely within the State. The tax was fairly apportioned by these contracts to that portion of the gross receipts representing activities only in Hawaii. *Cf., McCaw* v. *Fase,* 40 Haw. 121, *aff'd,* 216 F.2d 698, *cert. denied,* 348 U.S. 927 (1955). The statute cannot be assailed as precluding a fair and reasonable apportionment of the gross receipts of taxpayers.[12]

Taxpayers' alternative contention is that since Overseas Van, Ltd. throughout the assessment period, and HC&D Moving & Storage, Inc. in the first two years of the assessment period, engaged only in the business of hauling household goods under through bills of lading, the general excise tax as applied to these activities is invalid. In support of this proposition they rely principally on *Spector Motor Service, Inc.* v. *O'Connor, supra,* 340 U.S. 602 (1951) and *Railway Express Agency, Inc.* v. *Virginia, supra,* 347 U.S. 359 (1954) for the premise that a state may not lay a privilege tax on a taxpayer engaged exclusively in interstate commerce. However those cases present different factual situations. There, the taxpayers were both engaged in the business of interstate trucking so that their fleet of trucks moved across state lines. They were never engaged in the business of transporting goods solely between points in the same taxing state.[13] In contrast here, Overseas Van and HC&D Moving & Storage were

---

[11] See footnote 2 above.

[12] It should be obvious that the apportionment provisions of R.L.H. 1955, § 117-18, as amended, set out above, are not applicable since taxpayers admittedly engaged in business only in Hawaii insofar as the transactions forming the basis of the tax are concerned.

[13] Railway Express Agency, Inc. was in fact denied the authority to do any intrastate business in Virginia. *Railway Express Agency, Inc.* v. *Virginia,* 153 Va. 498, 150 S.E. 419, *aff'd,* 282 U.S. 440 (1931).

never engaged in transporting goods beyond the boundaries of Hawaii. They performed their transportation services solely within the territorial limits of the State. It was the activity of others that moved the goods beyond the territorial limits of the State. Apart from these factual differences which hardly make *Spector* and *Railway Express* dispositive of this case, the force and effect of those cases likewise may well have been considerably diminished by the later cases hereinabove considered which now focus their attention on the taxpayers' local activities and benefits.

The fact that these two taxpayers were engaged exclusively in this type of business is not crucial in the determination of their tax liability in this case. As in the case of the other taxpayers the significant factor is the nature of their activities, which like the others were purely and peculiarly local in character and justify the imposition of the tax.

The judgments appealed from are affirmed.

*Frank D. Padgett* (*Robertson, Castle & Anthony* with him on the Opening Brief; *John H. R. Plews* with them on the Reply) for Plaintiffs-Appellants.

*Allen I. Marutani,* Deputy Attorney General (also on the brief) for Defendant-Appellee.