[No. 38549.    En Banc.    July 6, 1967.]

Lone Star Cement Corporation, *Respondent,* v. The City of Seattle *et al., Appellants.*\*

*A. L. Newbould* and *Jorgen G. Bader,* for appellants.

*Little, Gandy, Stephan, Palmer & Slemmons, Herbert S. Little,* and *Richard W. Dameyer,* for respondent.

*Reported in 429 P.2d 909.

WEAVER, J.—Lone Star Cement Corporation, a Maine corporation authorized to do business in this state, brought this action (1) to recover business and occupation taxes paid under protest to the city of Seattle, and (2) to restrain the city from levying and collecting business and occupation taxes upon a portion of its business activities, in the circumstances hereinafter set forth.

The city appeals from a $12,457 judgment against it, with 6 per cent interest thereon from the date of payment under protest of the various quarterly business and occupation tax payments, made during the period under consideration. The city also appeals from the judgment which enjoins it from levying certain business and occupation taxes against plaintiff.

The controversy was submitted to the trial court upon exhaustive stipulations as to the facts, with exhibits attached, which the trial court adopted as its findings of fact.

The nub of our problem is the application of sections 3 and 6 of the Seattle business and occupation tax, ordinance 72630, to the facts before us.

The ordinance imposes an excise upon the privilege of *engaging in business activities in Seattle* measured by the gross receipts, income or proceeds of such activities. It is calculated at the rate of one-tenth of one per centum. Section 3 of the ordinance provides in part:

there is hereby levied . . . *for the privilege of engaging in business activities,* a license fee or occupation tax . . . to be determined by application of rates given against value of products, gross proceeds of sale or gross income of business, as the case may be, . . . as follows:

. . . .

(b) Upon every person engaging within this City in business as a manufacturer; as to such persons the amount of the tax . . . shall be equal to the value of the products manufactured, multiplied by the rate of one-tenth of one per cent;

The measure of the tax is the value of the products so manufactured, regardless of the place of sale or the fact that deliveries may be made to points outside the City.

(c) Upon every person engaging within this City in the business of making sales at wholesale or retail . . . as to such persons, *the amount of tax* with respect to such business shall be equal to the gross proceeds of such sales of the business without regard to the place of delivery of articles, commodities, or merchandise sold, multiplied by the rate of one-tenth of one per cent. (Italics ours.)

Section 6 of the ordinance provides in its entirety as follows:

Persons engaged in the business of rendering services both within and without the city, or partially within and partially without the city, and maintaining an office or place of business within the city and not elsewhere, shall be taxable on the gross income from the business without regard to the place where the services are rendered; and such persons having an office or place of business inside the city and also elsewhere shall, for the purpose of computing tax liability under this ordinance, apportion to the city that portion of his gross income which is derived from services rendered within the city. Where such apportionment cannot be made by separate accounting methods, the taxpayer shall apportion to the city that portion of his total income which the cost of doing business within the city bears to the total cost of doing business both within and without the city.

Persons maintaining *an office, plant, warehouse or other business establishment which is partly within and partly outside of the city,* shall be taxable on the value of products, gross proceeds of sales, or gross income of the business attributable to business within the city, ascertained either (i) by a segregation of business within and business outside the city, shown and supported by separate accounting records, or (ii) if such segregation cannot be practicably made, by an apportionment to the city of that part of the total value of products, gross proceeds of sales, or gross income of the business derived from business both within and outside the city (aa) in the proportion that the cost of doing business within the city bears to the cost of doing business both within and outside of the city, or (bb) when the use of such apportionment factor is impractical or inequitable, by a fair and equitable apportionment of such values, proceeds, or income between business within the city and business out-

side of the city upon such basis, comparable in character to that prescribed in (aa) above, as shall be agreed upon by the Comptroller and the taxpayer after consideration of the facts. (Italics ours.)

Plaintiff produces Portland concrete and prepared masonry cement which are manufactured in two cement plants, one in Seattle, King County, the other in Concrete, Skagit County, Washington. Products are sold at each plant to customers throughout the state of Washington.

The home office of the company is in New York. Plaintiff has its Washington division headquarters—one of eight—in Seattle. Plaintiff also has an office at its Concrete, Washington plant in Skagit County.

At the Seattle office are the regional vice-president, the divisional sales manager, the divisional comptroller, two order clerks, and other office personnel. Including employees in the cement plant, plaintiff has 75 to 80 employees in Seattle. Accounting books of plaintiff's Washington division, insurance records, operation files of salesmen, accounts receivable ledger, sales invoices of both cement plants, and copies of bills of lading from the Concrete plant are kept in the Seattle office. Plaintiff has bank accounts in both Seattle and Concrete, Washington. Ninety per cent of the bills of the Seattle and Concrete plants are paid by plaintiff's home office in New York.

At its plant in Skagit County, plaintiff has a chief and assistant clerk, a timekeeper, a stenographer, a shipping clerk, a storage clerk, and a foreman. Including workmen in the Skagit County plant, plaintiff has 110 to 125 employees. The following records are prepared and maintained by plaintiff's office at Concrete, Washington: all stores accounting, purchase orders, payroll invoices, supplies and parts inventory, all timecards, and all accounts payable records. The Concrete office does all the input data processing for the payroll necessary for the computer in the New York home office.

During the period in question, plaintiff had five salesmen, each with definite territories. There was a salesman for Seattle and one for the remainder of King County. The

other three salesmen were in Sedro Woolley, Yakima and Tacoma. It is stipulated that "There is little supervision and direction required by the Division Sales Manager regarding the salesmen." Although subject to certain minimal requirements, the salesmen were allowed a large measure of independent action. They selected their own sales routes, executed their own sales, and operated independently of the Seattle office, with the exception of being in communication through the mail or by telephone. On the average, a salesman located outside of Seattle came to the Seattle office 8 to 10 times a year.

Plaintiff advertises in national trade periodicals with a world-wide circulation, rather than at a local Washington level. This advertising uses plaintiff's New York home office address. It also lists the Seattle office and sometimes the Seattle and Concrete, Washington plants.

As the result of long-established business relations with various customers located outside Seattle, over 88 per cent of the cement products that the Concrete plant manufactured and sold were delivered to trucks for ultimate destination outside the city of Seattle *without the prior knowledge of the Seattle office or of the salesmen in the field.* The Seattle office is informed, at the end of each day, of the sales made at the Skagit County plant. On the average, only one or two of every 24 sales of cement from the Skagit County plant (which never physically enter the city of Seattle) occur as the result of an order placed by a customer through the Seattle office. The remaining 22 or 23 of the 24 sales are reported to the Seattle office in the evening after the sales have been consummated and delivery made to the customer at Concrete.

Plaintiff's theory of its tax liability under Seattle's business and occupation tax is this:

It has paid, without protest, the tax on its gross sales of all cement products manufactured at the Seattle plant for delivery within or without the city; it has paid the tax on the gross sales of all cement products manufactured at its plant in Skagit County, which enter the city of Seattle and

are subsequently sold by plaintiff within or without the city.

Plaintiff, however, has paid *under protest* the business and occupation tax levied by the city of Seattle on the gross sales of all cement products manufactured at its Skagit County plant which were sold at Concrete, Washington, for delivery to points outside the city of Seattle. Plaintiff maintains that these transactions have only a de minimis connection to the Seattle-based operations; and that under section 6 of the business and occupation tax ordinance, quoted *supra,* it is entitled to apportionment of that part of gross receipts from sales of products that do not physically enter the city of Seattle. Plaintiff contends that these gross receipts are in no way connected with "sales activities" in Seattle and cannot be considered a part of the basis for levying a tax upon "the privilege of engaging in business activities" in Seattle.

Defendant city, on the other hand, contends that all of plaintiff's gross proceeds are attributable to its Seattle-based activities. Thus, the issue is joined.

At the outset, we point out that plaintiff does not contend that Seattle's business and occupation tax ordinance is unconstitutional. The thrust of plaintiff's argument, and the only one we need consider, is that the method by which defendant city levies the tax upon plaintiff deprives it of equal protection of the law under the fourteenth amendment of the federal constitution, and extends to others "privileges and immunities" not extended to plaintiff, in violation of art. 1, § 12 of the state constitution.

■ In *State v. Sears,* 4 Wn.2d 200, 209, 103 P.2d 337 (1940), the court, quoting from 2 Cooley's Constitutional Limitations (8th ed.) 824, stated that:

". . . It [the guaranty of "equal protection of the laws"] merely requires that all persons subject to such legislation shall be treated alike, under like circumstances and conditions, both in privileges conferred and liabilities imposed. . . ."

In *State ex rel. Bacich v. Huse,* 187 Wash. 75, 80, 59 P.2d 1101 (1936), this court laid down the guidelines for the

application of the constitutional provisions to which we have referred:

> The aim and purpose of the special privileges and immunities provision of Art. I, § 12, of the state constitution and of the equal protection clause of the fourteenth amendment of the Federal constitution is to secure equality of treatment of all persons, without undue favor on the one hand or hostile discrimination on the other.

> To comply with these constitutional provisions, legislation involving classifications must meet and satisfy two requirements: (1) The legislation must apply alike to all persons within the designated class; and (2) reasonable ground must exist for making a distinction between those who fall within the class and those who do not.

This brings us to the question: Does the administrative interpretation and application of sections 3 and 6 of Seattle ordinance No. 72630 (quoted *supra*) by the city comptroller's office extend to others "privileges and immunities" not afforded plaintiff, so that it is deprived of "equal protection of the law"?

For an answer we turn to the exhaustive agreed statement of facts. We find three factual situations that were presented to the trial judge. He, for the most part, based his decision upon them. The agreed statement of facts is most detailed. It would extend this opinion (and it is already too long) beyond reasonable bounds to expand upon it.

■ The second paragraph of section 6 of ordinance 72630 (quoted *supra*) was adopted December 29, 1943 to accommodate Boeing Airplane Company. Its Plant No. 2 is bisected by the city's corporate line. Since the word "plant" is in the singular and not the plural, the comptroller has taken the position that a company with two plants, one of which is not physically located within the city, is not entitled to apportionment, whereas a company whose single plant (singular) is located partly outside the territorial limits of the city and partly inside is entitled to apportionment of its business within the city, when it pays business and occupation taxes in accordance with certain formulae

set forth in paragraph 2 of section 6 of the ordinance. We believe this to be a distinction without a difference.

We omit the details of the functions carried on by Boeing within the city of Seattle and those carried on without the city of Seattle. It is sufficient to state that the city permits Boeing to apportion its business and occupation taxes paid to the city. We reject the argument (made on oral presentation to this court and tape recorded) that Boeing's situation is *sui generis*.

Next, the agreed statement of facts brings us to the application of the ordinance by the city comptroller to the Columbia Geneva Steel Division of the United States Steel Corporation. It has an office in Seattle which does all of its billings and receives payments for sales made within the state of Washington. It is sufficient to state that the city comptroller's office permits the Geneva Steel Division to apportion its gross receipts for the purpose of paying Seattle's business and occupation tax.

Finally, we are confronted with the situation of Frederick & Nelson, one of Seattle's largest department stores, a division of Marshall Field of Chicago. Frederick & Nelson has a large store in Bellevue, Washington, across the lake from Seattle. We quote the agreed statement of facts:

> The following functions of the Bellevue Store are performed by the main Store of Frederick & Nelson in Seattle: purchasing, billing, advertising, credit collection, charge account payments by customers, and the overall direction and management of the Bellevue Store which is performed by the top executives for Frederick & Nelson who are located at the main Store in Seattle.

Seattle does not collect business and occupation taxes on the gross sales of the Bellevue store of Frederick & Nelson, whose main store is located in the city of Seattle.

After a review of the facts, we find no reasonable grounds to make a distinction between plaintiff and the three exemplars submitted to us by the agreed statement of facts. They are all in the same class and must, for constitutional reasons, be treated alike.

The sales and business activities of plaintiff's Skagit County plant are not the result of extensive promotional and service efforts of plaintiff's Seattle office. Stated differently, the business activities of plaintiff's Seattle office are not decisive factors in establishing or holding the market for plaintiff's products sold at Concrete, Washington for delivery to places within the state other than the city of Seattle. In this respect, the instant case differs from *General Motors Corp. v. State,* 60 Wn.2d 862, 376 P.2d 843 (1962), and *Field Enterprises v. State,* 47 Wn.2d 852, 289 P.2d 1010, *aff'd* 352 U.S. 806 (1956).

■ The phrase, "the privilege of doing business," used in section 3 of Seattle's ordinance, is all-inclusive; but taxation of that privilege must be confined to a standard within the territorial limits of Seattle, for the city has no power either to authorize, license, or tax activities beyond its territorial limits. We conclude, as did the trial court, that Seattle's comptroller has been applying the city's business and occupation tax ordinance in a manner which deprives plaintiff of equal protection of the law and grants to others "privileges and immunities" not extended to plaintiff.

■ Finally, the city contends that the court erred when it allowed 6 per cent interest from the date of payment under protest of the various quarterly business and occupation tax payments. We do not agree. *Doric Co. v. King Cy.,* 59 Wn.2d 741, 370 P.2d 254 (1962), and authorities cited and discussed.

The judgment is affirmed.

FINLEY, C. J., HILL, ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., concur.